BUMPASS v. JOHNSON et al.
(No. 640–4502.)

(Commission of Appeals of Texas, Section B. June 23, 1926.)

1. Wills ⬉792—Widow who accepted devise of property to which she would not otherwise have been entitled, given "in lieu of settlement of her community interest," held to elect to take under will.

Widow, who accepted devise of property to which she would not otherwise have been entitled, given "in lieu of settlement of her community interest," under will which undertook unmistakably to dispose of entire community property, *held* to elect to take under will rather than to claim community rights. ,

2. Wills ⬉792(3)—Party electing to take under will must have knowledge of his right to elect, and intend to elect.

In absence of statutory regulation, party electing to take under will must have knowledge of his right to elect, and must intend to elect.

3. Wills ⬉792(3)—To have knowledge of rights so as to permit election under will, party must have knowledge of right to elect, and know that estate requires election.

To have knowledge of rights so as to authorize election under will, party need not know exact extent of legal rights or legal effect of choice, but must have knowledge of

right to elect, and know that estate affected by will requires him to choose. ·

4. Wills ⬉792(4).

Probating of will disposing of community property, and inventorying of all community property, is not necessarily inconsistent with surviving widow's claim against will.

5. Wills ⬉796.

Widow, to avoid effect of election under will on ground of ignorance of rights, must plead and prove state of facts that would afford her such relief in equity.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by Carrie Nelson Johnson and others against Ed. R. Bumpass and others. Judgment for defendants on their cross-action was reversed, and case remanded by the Court of Civil Appeals (275 S. W. 1108), and defendants bring error. Judgment of the Court of Civil Appeals reversed, and that of the trial court affirmed.

Bumpass & Wade, of Terrell, for plaintiffs in error. ,

Wynne & Wynne, of Kaufman, for defendant in error.

SPEER, J. This case involves the determination of the question whether or not Carrie Nelson Johnson, the surviving widow of J. R. Nelson, deceased, elected to take under the terms of the will of her deceased husband rather than to claim her community rights in his property. The action was one to recover certain lands, instituted by Carrie Nelson Johnson and others against Ed. R. Bumpass and others, and, from an instructed verdict for the defendants upon their cross-action to quiet the title, an appeal was prosecuted, and the Court of Civil Appeals reversed the cause and remanded it for a new trial, holding that whether or not Carrie had elected to take under the will was a question of fact for the jury. Carrie Nelson Johnson and the other plaintiffs in error are negroes. The writ of error granted to Ed. R. Bumpass and others presents practically the sole question of whether or not the undisputed shows an election by the surviving wife. The opinion of the Court of Civil Appeals is found in 275 S. W. 1108.

The deceased, J. R. Nelson, appears to have been an unusually wealthy negro, his estate consisting not only of several hundred acres of the well-known rich black waxy lands of Kaufman county, but of a large amount of money and other personal property as well. His will, among other things provided:

"Fourth. I give to my wife, Carrie Nelson, the right to use, occupy and to collect and enjoy the income from the following described real estate, to wit: All the lands which may be owned by me at the time of my decease in

BUMPASS v. JOHNSON

the Ransom Sowell survey in Kaufman county, Texas, same at this time, consisting of about 515 acres; also the 120-acre tract of land which I own in the survey situated in Kaufman county, Texas, being about five miles south from Kaufman, same having been purchased by me from John Reasonover; also the 48½ acres of land in a tract owned by me in the Mary Galbraith survey in Kaufman county, Texas; which right herein given to her, the said Carrie Nelson, shall be and continue during the term of her natural life and so long as she remains unmarried; provided, however, that should she at any time remarry, that the right hereinbefore given and granted to her shall thereupon at once terminate, and she shall thereupon, have no interest or right whatever in the lands mentioned in this paragraph, immediately upon the remarriage of my said wife, if such event should occur, and if she does not remarry, then when she shall die, I direct that the real estate mentioned and described in this paragraph number four shall become the property, in fee simple, of any nephews and nieces, to wit: Eliza Higgins, Richard Higgins, Robert Roman, Guf Roman, Willie Roman, Angeline Roman, Lottie Taylor, Charles Nelson, Arvelia Jackson, Fern Nelson and Henry Bailiff, share and share alike, that is, to each of them a one-eleventh interest in the said lands mentioned in this paragraph, to them and their heirs in fee simple forever.

"Fifth. I do hereby give, bequeath and devise all the remaining property of which I shall die seized and possessed, whether real, personal, or mixed, separate or community, after the payment of the foregoing legacies and the allotment of the foregoing lands, to my wife, Carrie Nelson, same to be hers absolutely in fee simple forever—it being my will and desire that she accept this bequest and devise in lieu and settlement of her community interest in a portion of my estate.

"Sixth. I hereby direct that if any legatee or devisee under this will shall make any contest of the same, either in the courts or by seeking, otherwise, to annul any of its provisions that such legatee or devisee shall receive no bequest or deviee, and shall not inherit any portion of my estate; but the portion which such contestant is allotted herein shall, in such event descend according to the laws of descent and distribution to the other heirs to my estate.

"Seventh. I constitute and appoint my wife, Carrie Nelson, my daughter, Ethel Cooper, and Ben Allen, as executors of this my will, and I direct that no security shall be required of them as such executors; and it is my will that no other action shall be had in the county court in the administration of my estate than to prove and record this will, and to return an inventory and appraisement of my estate and list of claims."

The Court of Civil Appeals felt constrained by the decision in Dunn v. Vinyard (Tex. Civ. App.) 251 S. W. 1046, to hold that it could not be said as matter of law the survivor Carrie had elected to take under rather than as against the will.

[1] We are of the opinion the summary instruction below was correct. There can be no doubt but that the will upon its face was inconsistent with the rights of the widow as survivor and necessarily put her upon her election one way or the other. It expressly declares, "It being my will and desire that she accept this bequest and devise in lieu of the settlement of her community interest in a portion of my estate"; and the will undertakes unmistakably to dispose of the entire community property. There is no contention but that this is the effect of the will, but the contention rather is that, even though there is an apparent election by her, yet such election is not binding because of a lack of knowledge upon her part of her rights, and especially of the condition and extent of the estate. The surviving widow testified:

"I don't know who prepared the will—I don't remember. I first saw the will after Bob's death; I guess it was a week after his death. Mr. Warren exhibited it to me; he is a lawyer —Senator Warren, who used to be here. He went over it with me—he just read it. He went to the bank when he read it. Mr. Allen— Mr. Ben Allen—was present when it was read. I think that is all that was present at the time. Mr. Ben Allen is vice president of the American National Bank in Terrell. We went over the will. We didn't make any decision about it. Yes; I suppose the will was probated. I was one of the executors under the will. Senator Warren was a lawyer. Mr. Allen was vice president of the bank. I trusted them and had implicit confidence in them to manage my estate. I trusted them and relied upon them to look after my business to some extent. I relied upon them to the extent to see after some of the things that I could not, such as running people down and trying to collect money. Under the terms of the will all personal property was given to me. Mr. Allen looked after that for me. He did not do anything except what I told him to do. If he did anything it was satisfactory to me. From that time and practically up to date he has discussed with me the holdings of my estate. I have taken his advice and counsel in everything. This inventory and appraisement of list of claims of the J. R. Nelson estate in probate court of Kaufman County was signed by the executors, Ben Allen, Ethel Cooper, and myself. I was one of the executors and signed this inventory and appraisement. I remember of signing the instrument you have there. We did endeavor to get a true and accurate account of the estate. We tried to get the inventory as nearly correct as possible. * * * The will gave the rents to me; I was not married, and I was entitled to it. After I married I collected rents for two years and settled with three of the heirs. I have not paid any taxes on this land for the last three or four years. I have not had possession, not since it was deeded to Mr. McCord. Yes; I knew that Mr. McCord bought it. I knew that Mr. McCord and Mr. Allen took possession of it after the deeds. I have not attempted to thwart that transaction. About three or four months ago I was made a party to a suit filed in the federal court. No; I did not make any answer to that. Some interrogatories were propounded to me in that case. I did not make any complaint until recently. I do not know where Mr. McCord and Mr. Allen were when they bought this land. One of these nephews who lives in a foreign

state came when they were selling this land. His name was Richard Hagan (Higgin). I talked with him. I did not ask him why he was here. He did not discuss with me about being married. He was here a day or two. I knew he was selling his interest. I have not paid this rent to the others for the last three years. I do not know the date when Arvelia and Charlie sold their interest in this land to Mr. McCord. I heard they had sold after they sold it. They were at my house—they did not both sell at the same time. * * * I let Mr. Allen manage this land as he thought best. I was willing to abide by his judgment and take his advice and counsel. I am willing to do that now. So far, whatever he has done has been satisfactory to me. * * * I knew that I was barred under the will. I had Senator Warren as my counselor—he was Bob's attorney. I guess he wrote the will. I don't know that he did write it. He read it to me. He read it to me in Mr. Allen's presence. We decided to probate the will. I did not tell Ethel then that she could have her part. I did not tell her that at the funeral. I told her at my home. I think that was after we decided to probate the will. I did not think it was all right for Robert Bennett to have his, but I gave it to him. So far as I know I did everything just as the will called for. The will gave Robert Bennett some land. Bob had sold the land and had some notes—I did not give them to Robert—they were mine. The will gave them to me, and I was not willing for Robert to have them. I claimed the notes because the will gave them to me. Robert has the land. If Bob had not sold that land, and the will gave it to Robert, he would have gotten it. I said that I was ignorant about what these legal terms meant. I have transacted a lot of business. I have had business with Mr. Allen. He was always Bob's adviser. What he has done has been with my consent and knowledge. He has not done anything without my knowledge. I knew of it when he was buying out these heirs. I knew he had deeds from them. I heard that he paid them $2,000 each. Mr. Bumpass told me that he was taking this land over."

[2] It is true, in the Dunn v. Vinyard Case, Judge German for the Commission of Appeals said:

"In the absence of statutory regulation, it may be generally said that two things are necessary in order that acts relied upon will amount to an election [under a will]: First, the party must have had knowledge of his rights; that is, he must have had knowledge of the condition and extent of the estate, and of his duty to choose between the inconsistent rights; second, that he intended to elect, as shown by his words and acts, viewed in the light of all the circumstances."

[3] That undoubtedly is a correct statement of the law, and we think every requirement therein stated has been met in the present case. We think that the party sought to be estopped must have had knowledge of his rights; that is, of the condition and extent of the estate and of his duty to choose between the inconsistent rights. It is not meant that such party must have knowledge of the exact extent of his legal rights, or the exact legal effect of a choice one way or the other. It merely means that he must have knowledge of his right to elect to take under the will upon the one hand or to refuse upon the other, and that the estate affected by the will is of such a character as regards his rights as to require him to choose between the inconsistent rights. If a knowledge of all the legal effects of election were required, any layman would be seriously embarrassed, and might avoid any sort of election under a will, for these legal effects are some times difficult of comprehension even by those learned in the law. That the above facts indisputably show that Carrie did know that the estate being disposed of consisted of all the community property of her husband and herself, and that she was necessarily put to the duty of choosing between her rights as a widow to one-half the property and the alternative rights given by the will, seems clear. That she did actually elect, by taking literally according to the instrument that which she would not otherwise have been entitled to, seems equally clear. These two facts are undisputed, as we construe the evidence. The case of Dunn v. Vinyard, goes further, however, and says:

"The doctrine of election under a will is too familiar to require a general discussion. Briefly it may be said that, where one has a valid claim to property which is disposed of by will (as in the case of the surviving wife in community property), in violation of such right, and at the same time other property to which the claimant would not be entitled is devised to the claimant, an election becomes necessary. In other words, an election means that a legatee or devisee under a will is put to the choice of accepting the beneficial interest offered by the donor in lieu of some estate which he is entitled to, but which is being taken from him by the terms of the will. When by the express terms of the will the party is put to an election, he must make a choice, regardless of the relative value of the two inconsistent rights. To uphold an election, the compensating thing need not be of value equal to that taken away. Smith v. Butler, 85 Tex. 130, 19 S. W. 1083. It may be, and often is, true that the party making the election is prompted to do so by considerations other than the value of the estate or property actually received under the will. Some of the difficulties usually encountered in cases of this kind are avoided by reason of the explicit language of the will itself. Item eleventh expressly declares that it is the purpose to dispose of the whole of the community estate, and Mrs. Dunn is expressly advised that she is put to an election."

[4] Now these words are very apt in the present connection. The deceased leaving a surviving child only one-half the community estate would descend to the surviving wife (Morrill v. Hopkins, 36 Tex. 687; Speer's Law of Marital Rights, § 567), and it is clear under the facts that Carrie as survivor received a very large sum under the will which she would not have received under her rights

as survivor. Even though account should be taken of her expenditures of most of this in payment of the debts of the deceased, notwithstanding this, there yet remained a very considerable advantage in the way of rents and income that she could take only under the will. It is therefore no answer to say she has appropriated no more than one-half of the value of the community estate. The fact remains she has taken to herself that which she would not otherwise be entitled to receive, to the detriment of the other beneficiaries. It is not a question of exact compensation or accounting between the respective interests. It is a question of her attempting to occupy inconsistent attitudes with respect to the property disposed of in the will. It will be noted that in Dunn-Vinyard Case the principal evidence of election was the probating of the will and tender of an inventory. It was there held that such acts constituted evidence of an intention to elect to take under the will. See Farmer v. Zinn (Tex. Com. App.) 276 S. W. 191.

[5] Nevertheless, it is apparent that such conduct alone is not necessarily conclusive. for a deceased husband would have the right at all events to dispose by will of his community interest, so that probating of the will and even inventorying of all the community property would not necessarily be inconsistent with the claim of the survivor against the will. But here we have altogether another question, and one of controlling importance; that is, the undisputed, actual acceptance of the benefits conferred by the will which the widow otherwise would not have enjoyed. She will not be permitted under these circumstances to deny that she has elected to take under the will. What stronger evidence of intention to take can there be than the actual taking? If she, though "swearing she'd ne'er consent, consented," then she has consented. Again, it may be noted the present is a case where the widow has undeniably actually elected to accept under the terms of the will, but she seeks to avoid the effect of such acceptance through a contention based upon an equitable consideration; that is, that she was in ignorance of some material phase of her rights. Her pleadings, however, tender no such avoidance. We think it was incumbent upon her, having actually elected, to plead and prove such a state of facts, if they existed, as in equity would relieve her from the effects of an election. She has done nothing of the kind. We think indisputably that the surviving widow, upon a sufficient knowledge of her rights and the necessity to choose between them, has elected to take under the will and has actually taken under the terms of the will, and that the trial court was right in instructing a verdict as he did.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.