MRS. HATTIE BALDWIN, INDIVIDUALLY, V. F. T. BALDWIN, INDEPENDENT, CO-EXECUTOR ET AL.

No. 7429. Decided January 10, 1940.
Rehearing overruled February 21, 1940.
(135 S. W. 2d Series, 92.)

*Erwin Werlein,* of Houston, for appellant.

The court should not have found and held that Hattie Baldwin accepted substantial benefits under the will and thereby made an election binding upon her interest in the community estate, because she received no substantial benefits thereunder inconsistent with her community interest in the estate, and there was no unequivocal intention on the part of the testator to dispose of his wife's one half interest in the community, of which interest she was the owner and not an heir, and therefore she was put to no election. Packard v. DeMiranda, 146 S. W. 211; Dakan v. Dakan, 52 S. W. (2d) 1070, affirmed by the Supreme Court, 125 Texas 305, 83 S. W. (2d) 620; Rippy v. Rippy, 49 S. W. (2d) 494.

*Ernest A. Knipp, Andrews, Kelley, Kurth & Campbell,* and *Harry H. Jones,* all of Houston, for appellees.

The will of Jacob C. Baldwin, deceased, undertook to dispose of all community property of himself and his wife, Mrs. Hattie Baldwin, and made to her certain bequests in lieu of her community interests, and required an election as to whether she would assert her community property rights to take under the will. Bumpass v. Johnson, 285 S. W. 272.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This case is before us on the following certificate:

"The questions of law hereinafter certified arise out of the record in this cause—pending here undisposed of on an appeal from the district court of Harris County—which involve, among other issues, a construction of the will of the late Jacob C. Baldwin, a lawyer of Houston.

"As its terms—set out infra—disclose, the will bore the date of March 4 of 1921, whereas the testator died on November 13 of 1921, the will having been filed on November 26 thereafter for and subsequently admitted to probate in the county court of Harris County, Texas, on January 3 of 1922; the two independent executors therein named, F. T. Baldwin, and Hattie Baldwin, the testator's surviving wife, duly qualified as such independent executors on January 6 of 1922, and for fifteen years continuously thereafter acted together in such capacities, each and both of them during that time having acted under the will as if it did dispose of the estate it actually dealt with—that is, all property standing in his own name, which, undisputedly, was the community—property of the testator and his wife, Hattie Baldwin—as a whole, including such wife's community—interest therein; throughout that period they likewise so managed and administered this estate without differences or controversies, until the older of the grandsons named in the will attained his majority, whereupon this litigation—calling, in part, for a construction of the will in the respect herein inquired about—arose.

"Upon the facts stated we ask:

"(1) Considered from its four corners, did the will manifest such a definite purpose and intention upon the testator's part to dispose of such estate as a whole, including his wife's community-interest therein, as required an election upon her part as to whether she would take under it, or would assert her community—rights aliunde?

"(2) Did the wife's stated qualification and administration for the 15-year period under the terms of the will estop her from thereafter claiming her community-interest in the property notwithstanding it?

"* * * * * * * *."

The will is long and will not be set out in full. In the first paragraph it names the testator's wife, Hattie Baldwin, and his nephew, F. T. Baldwin, independent executrix and executor, respectively, of his will and provides that in the event of the death of either of them Myrta Lynch Baldwin shall act in her

or his place and stead. Then follow these provisions which we deem to be material to the questions under consideration:

"2. All property owned by either myself or wife is our community property, except the property inherited by her from her deceased father and mother, which· is located in Hill and Fannin Counties, Texas. I now declare all property, the title to which stands in my name, as being community property. With my consent and approval, considerable property has been paid for out of community funds and conveyed to my wife during our married life as her separate estate and she has been permitted to have complete management and control of it. The record title to this property now stands in her name. The deeds recite that it is her separate property and it was so intended. I wish all such property to be treated as her separate property, managed and controlled by her alone.

"3. All property owned by me at the time of my death other than that declared to be my wife's separate property shall be managed, controlled and disposed of with the joint approval and conveyance of my executors.

"My wife is equally interested in my estate. We are now receiving a royalty from some of our oil lands. These royalties are liable to fluctuate, but will no doubt last for years. I want her to enjoy the same by using as much as one-half of the same, if she so desires, or if it is needed, for her personal comfort. By qualifying as executrix of this will it shall be considered and held as a full approval upon her part of all the specific and special legacies herein made and provided for, as well as all the provisions hereof and all such shall be binding on her and her interest in said estate.

"4. * * * * * * * * *

"5. * * * * * * * * *

"The houses and lots at 711 Hamilton Street and 1909 Rusk Avenue, shall never be sold by either my executors or legatees. These properties shall be under the control and management of my said executors until my youngest grandson arrives at the age of twenty-one years, when they shall be delivered to my said legatees to be controlled and managed by them, without the power of sale.

"6. Subject to the limitations placed upon the same I give all my property, of every kind, as well as all choses in action, to my two grandchildren, J. C. and Robert Basil Baldwin, share and share alike.

"7. It is my desire, and I so direct, that my daughter-in-law, Myrta Lynch Baldwin, shall be maintained and supported out

of my estate and shall have the right to live with my wife and grandchildren in our home, free of any charge, until she shall marry, or for her natural life in the event she fails to marry.

"The house and furniture located on the present homestead of myself and wife shall be kept insured to the amount of insurance now upon the same, and in the event the improvements or any part thereof shall be destroyed by fire, or otherwise, similar or like improvements shall be placed upon the property and it kept as the home of my wife, daughter-in-law and grandchildren, each being considered as an individual member of the same family.

"In the event I should, or my executors should, at any time erect upon said property an apartment house or other improvements, so that it or any part thereof, shall become revenue bearing then after the payment of taxes, the revenue, if any, derived from such property shall be used for the support, maintenance and pleasure of my family aforesaid.

"In the event my wife should die prior to the death of Myrta Lynch Baldwin, and the said Myrta Lynch Baldwin has never remarried, she shall have the free use and control of the home place, with all revenues derived therefrom. She shall have no power to sell the same, nor to transfer or assign the rents or revenues, and her right to the same shall be forfeited upon her remarriage and it shall then become the property of my grandchildren.

"8. My houses and lots at 711 Hamilton Street and 1909 Rusk Avenue, are adjoining property, and if owned by me at the time of my death and it remains in its present state, I give to my beloved daughter-in-law for her natural life. She to have all rents and revenues therefrom, after the payment of all taxes on the same, with which to support herself. At her death, I give it to her two children, J. C. and Robert Basil Baldwin.

"9. If prior to my death my royalties from my oil lands are sufficient to justify my doing so, without incurring debt or inconvenience to myself, I intend to remove the house now located on my lot at 711 Hamilton Street and erect an apartment house on said lot, and some latter day move the house now located at 1909 Rusk Avenue and make an ell to the apartment building so as to cover these two lots with this apartment building, fronting both on Rusk Avenue and Hamilton Street. If this contemplated apartment is erected by me during my life time, it is my desire that this property shall never be disposed of by my executors or legatees. If the improvements contemplated are never placed upon the property by myself, then in that

event, as soon as my executors shall accumulate sufficient money from my royalties, with which to build such a building, it is my desire that they erect upon these two lots the building contemplated. These lots, together with the improvements placed thereon, either by myself or executors, shall form and constitute a permanent investment for the maintenance and support of my daughter-in-law and grandchildren. In the event the contemplated improvements are placed on this property, either by myself or executors, then after the completion of said improvements and the same are fully paid for, one-third (1/3) of said rents and revenues shall be delivered to my daughter-in-law, for her natural life and the remaining two-thirds (2/3) equally divided between my grandchildren to be delivered to them after they arrive at the age of twenty-one years.

"The intention of this clause is to create a life estate in my daughter-in-law and in my grandchildren respectively, sufficient to support and maintain them, which shall never be sold by them, or either of them, and shall never be liable for any debts created by them, or either of them.

"* * * * * * *

"14. I give to my nephew, F. T. Baldwin, all my library and office furniture of every kind and character, except iron safe and filing cases.

"* * * * * * *."

The general practice is to predicate our answers to certified questions solely on the facts contained in the certificate. Peavy Moore Lumber Co. v. First National Bank, 133 Texas 467, 128 S. W. (2d) 1158. However, in cases of dissent the practice has not been followed strictly. Pohle v. Robertson, 102 Texas 274, 115 S. W. 1166. The certificate in this case discloses an unusual situation. It recites that the Chief Justice was physically unable to participate, and the other two Justices could not agree. Because of that extraordinary situation the court permitted this certificate to be filed without being accompanied by a tentative opinion. For the same reason, even though the certificate does not contain sufficient recitals to enable us to answer the certified questions, we shall supplement those recitals by referring to the record and base our opinion on the certificate as supplemented.

If the will put Mrs. Baldwin to an election, it must appear therefrom that the testator unequivocally attempted to dispose of her community interest in the estate; the presumption being that he did not attempt to do so. Avery v. Johnson, 108 Texas

294, 192 S. W. 542; Sailor v. Furche (Com. App.) 22 S. W. (2d) 1065; Dakan v. Dakan, 125 Texas 305, 83 S. W. (2d) 620; Hocker v. Piper, 2 S. W. (2d) 997 (writ refused); 44 Tex. Jur. 867.

2 It must further appear that the will conferred a benefit upon her; that is, that it gave her something in lieu of what was taken away, something to which she would not have been entitled but for the will. Dunn v. Vinyard (Com. App.) 251 S. W. 1043; Dakan v. Dakan, supra; Bumpass v. Johnson (Com. App.) 290 S. W. 739.

■ In determining whether a surviving spouse receives a benefit under a will the court does not measure the relative values of the things received and those parted with. As stated in Dunn v. Vinyard, supra, "To uphold an election the compensating thing need not be of value equal to that taken away. Smith v. Butler, 85 Texas 126, 130, 19 S. W. 1083. It may be, and often is, true that the party making the election is prompted to do so by consideration other than the value of the estate or property actually received under the will."

■ Considering the will in the instant case in the light of these principles, we experience no difficulty in arriving at the conclusion that the testator attempted unequivocally to dispose of the entire community estate. Clearly, we think, he undertook, by the language used in the last sentence in paragraph three, to put his wife to an election. In paragraph five and eight he disposed of the real estate there described, and not merely a one-half interest therein. In paragraph seven he undertook to deal with the homestead as a whole. In paragraph four he dealt with the whole of the personal property there referred to. All of the other portions of the will clearly evidence that the testator used the term "my estate" as including all of the community estate standing in his name.

■■ The next question is, did the will confer a benefit upon Mrs. Baldwin? That is the most difficult question in the case. In our decision of the question next above discussed, we were guided by a rule which requires that all ambiguities be resolved against the theory that the testator made an attempt to dispose of the whole of the estate. The presumption being that he made no such attempt, ambiguities should be resolved in favor of such presumption. But in construing the will to determine what right or property was bequeathed or devised by a particular provision, a different rule obtains. That rule is that, if there be an ambiguity in that regard, the practical construc-

tion placed thereon by all interested parties in acting under it through a period of years, while not controlling, will be given much weight by the court in arriving at the proper construction be to placed on the will. 44 Tex. Jur. 743, 69 C. J. 125; Thompson on Construction of Wills p. 15; Schouler on Wills, 6th ed. 946. From this last authority we quote: "The practical interpretation placed on a will by all parties interested for a long priod of time will not be disturbed except for most imperative reasons." Annotations of the question appear in 67 A.L.R. 1272 and 94 A. L. R. 245. That rule is applicable in the instant case. This may be illustrated by considering the provision in paragraph three of the will to the effect that Mrs. Baldwin might enjoy as much as one-half of the royalties from oil lands, if she so desired, or if that amount be needed for her personal comfort. She and the executor, F. T. Baldwin, construed the will as authorizing her to receive one-half of the total amount of those royalties, free of all expenses. She elected thus to receive them and freely admits the collection by her of such royalties aggregating $108,368.15. But for the will, a portion of this income would have been used in payment of community debts; but, because of the will and the construction placed thereon by the parties, it was not so used. Clearly the language is susceptible of the construction placed upon it by Mrs. Baldwin and the executor. We, therefore, adopt that construction and hold that the will conferred a benefit upon her.

■ Further, in her pleadings in this case and in her brief filed herein in the Court of Civil Appeals, Mrs. Baldwin has construed the provision of the will under review as granting to her the right to use one-half of the royalties, freed from any liability for payment of community debts. She sought the recovery of a substantial sum in the trial court upon pleadings from which we quote as follows:

"* * * This defendant avers that the testator in his will in giving her the right to use one-half of such royalty if she desired to do so and enjoy the same, did thereby effectively remove such one-half of the royalty from any liability for payment of the community debts, and the expenses of operating the estate, so that all of the community debts and expenses of operating the estate are chargeable against the total receipts of the estate less the one-half of the royalties set apart to the defendant."

From her fourth proposition in her brief in the Court of Civil Appeals we quote:

"The court should not have held that Mrs. Baldwin was entitled to recover only one thousand four hundred ninety-four ($1,494.00) dollars plus certain sums expended since January 1, 1934, in satisfaction of the debts of the estate because the testator's precatory language giving her the right to use one-half of the oil royalties *removed the same from the expenses of the estate* without forcing her to an election, and because in addition to the amounts decreed Mrs. Baldwin, she was entitled to recover on her cross action approximately forty-five thousand ($45,000.00) dollars of the sixty-five thousand four hundred twenty-nine and 17/100 ($65,429.17) dollars on deposit in Houston banks and one-half of the sum of forty-five hundred ($4500.00) dollars due from the Gulf Company." (Italics ours.)

Of course, she is bound by this pleading and proposition This she freely admits. Her position seems to be that, while the will should be given that construction, still she was not thereby put to an election. With this we cannot agree. The testator clearly attempted to dispose of all of the community estate. The practical construction placed upon this ambiguous provision of his will clearly confers upon Mrs. Baldwin a benefit which she accepted and which she would not have enjoyed but for the will. Those two factors concurring, she was put to an election.

Owing to the somewhat restricted nature of the questions certified, we do not answer them yes or no, but the above reflects our views from a consideration of the record as a whole.

Opinion adopted by the Supreme Court January 10, 1940.

Rehearing overruled February 21, 1940.