**BRADSHAW et al. v. PARKMAN et al.**
**No. 3059.**

Court of Civil Appeals of Texas. Waco.
Jan. 8, 1953.

Rehearing Denied Feb. 13, 1953.

Orville M. Jobe and James T. Mixson, Waco, H. L. Williford, Fairfield, Ellen Victery, Teague, Dalton & Moore, Dallas, Carl Cannon, Groesbeck, for appellants.

Bowlen Bond, Teague, Bradley & Geren, Groesbeck, Turner, Rodgers, Winn, Scurlock & Terry, Dallas, for appellees.

TIREY, Justice.

This suit (nonjury) is an action in trespass to try title. There is also a count for title to United States Government bonds of the face value of $25,000. The first major question to be decided involves the construction of the last will and testament of J. B. Washburn. The second is: Did the surviving widow of the testator make an election under the will? We quote the pertinent parts of the will:

"First: I hereby give and bequeath to my wife, Ada Washburn, all of my personal property, of whatever kind and character, to have in her own right unconditionally, to dispose of, as she sees necessary, or to do with as to her seems right and proper, said personal property includes approximately five thousand dollars worth of vendor's lien notes, and My said wife, Ada is to also have said notes to do with as she deems proper. Except, $25,000.00 worth of Government bonds, the interest from said bonds is to go to my said wife, Ada Washburn, for her use and support during her natural life. The said bonds shall remain in possession of, and under the control of the executors to be hereinafter named.

"Second: It is my will and desire that all of my real estate shall be in possession of and under the control of my said wife, Ada Washburn, so that the rents and revenues, derived from said real estate to be used by her for her support during her life; however, my said wife shall not have the right to encumber said land in any manner; but, however, if she should be in such circumstances, as to require any assistance for her support or welfare, then in that event, she is given the right to sell said real estate, or any part thereof, provided, the three executors, to hereafter named, shall deem such sale or sales advisable and necessary for the support of the said Ada Washburn; then upon the approval of the said executors, the said Ada Washburn, shall have the right to execute any deed or deeds necessary to perfect said sale or sales.

"Third: It is my will and desire that upon the death of my said wife, Ada Washburn, then the residue of my said estate, be

it real or personal, or mixed, shall be divided equally among the heirs, of my only brother, J. S. Washburn, Dadeville, Alabama.

"Fourth: It is my further will, that One Dollar shall be given to each of my half-brothers, Albert Washburn; Joe Washburn, and Ernest Washburn; the heirs, of my deceased half-brothers & half sisters are to receive nothing of my estate.

"Fifth: It is my desire to give and bequeath to my said wife, Ada Washburn, all the cash that I have on hand in any bank or banks, and she is to have the right to handle said cash in any manner she so desires.

"Sixth: I hereby appoint as executors of this my will, John Riley, J. E. Woods, and McNeill Drumwright, without bond, and it is my further desire that no action shall be had in the County Court, other than to probate this will, and file inventory and appraisement of my said estate.

"Seventh: It shall be necessary that all of said three executors, shall act together, and all three must approve any act or acts concerning my said estate, before such decision or approval shall be effective."

The Statement of Facts contain some 320 pages and many exhibits. It also contains twelve separate stipulations of fact. The decree of the court covers some 32 pages of the transcript and necessarily we cannot state in detail its provisions. Since the court on request filed findings of fact and conclusions of law, and since the case involves so many parties, issues and property that it does not yield to a simple statement, we think the opinion will be more understandable to quote rather fully the findings of fact and conclusions of law, which we find to be controlling.

"Findings of Fact

"(1) The plaintiffs are the sole surviving children of J. S. Washburn, deceased. J. S. Washburn was the only full brother of J. B. Washburn. J. S. Washburn was married to Cassie Wheeless. J. S. Washburn was sixty-six years of age on December 23, 1931, when J. B. Washburn made his will. Cassie Wheeless Washburn, his wife, was fifty-nine years old. J. S. Washburn died January 7, 1950.

"(2) The half brothers and sisters of J. B. Washburn were Ernest S. Washburn, Henry J. Washburn, Albert B. Washburn, Nora Washburn Coleman, Joe W. Washburn and Ada Washburn, who died as a minor. Only Ernest S. Washburn, Albert Washburn and Joe W. Washburn survived J. B. Washburn, Henry J. Washburn died May 9, 1926, leaving Levicie Huckaby, Kate Haralson, Ethel Purcell, Johnnie B. Washburn, Buren Washburn, Alvin Washburn; Roy Washburn, who has since died, leaving a wife, Vida N. Washburn, and two children, H. Roy Washburn, Jr., and Mickey N. Washburn. Nora Washburn Coleman died July 9, 1895, and left Louella Hornsby, Alma Thornton and David Coleman. These last named half brothers and sisters and their heirs form one group of defendants who disregard the will of J. B. Washburn and claim that his property must be distributed by the laws of descent and distribution.

"(3) Another set of defendants are the heirs and devisees of Ada Bradshaw Washburn, who was the wife of J. B. Washburn. They are Alec Bradshaw, Ellis B. Bradshaw, Thelma Daniel, Jewell E. Bradshaw, W. B. Bradshaw, Maurine Bradshaw Dyer, Claude Morton, Barney Morton, Lem Morton, Pearl Weathers, Mrs. Lee Ella Hooker, Mrs. Ora Blair, Artie Stroman, Bertha Heflin Riddels, William J. Heflin, Ray Heflin, Nora Sanders, Cora Graham, A. Adams, Mrs. W. C. Looney and Leo E. Hubbard. This group of defendants likewise disregard the will of J. B. Washburn and contend that his property must be distributed by the laws of descent and distribution.

"(4) I find that J. B. Washburn is the common source of title of all parties.

"(5) J. B. Washburn married Ada Bradshaw December 24, 1919, in Limestone County, Texas. At the time of the marriage J. B. Washburn was fifty-two years old; Ada Washburn was forty-seven, J. B. Washburn died May 27, 1932, in Freestone County, Texas, testate, at the age of sixty-four. Ada Washburn survived him. Ada

Washburn died June 28, 1949, in Freestone County, Texas, testate, at the age of seventy-six. No children were born to J. B. and Ada Washburn; they had no children by any previous marriages; they did not adopt any children.

"(6) At his death J. B. Washburn left a will dated December 23, 1931, which Ada Washburn applied to probate; which has been probated. * * *

"(7) At his death on May 27, 1932, J. B. Washburn owned both separate and community property. He owned 715 acres of real property which was exclusively his separate property, acquired and paid for by him prior to his marriage to Ada in 1919. (We omit description of the property.)

"(8) At his death on May 27, 1932, J. B. Washburn and his wife, Ada Washburn, owned certain community property, real and personal. (We omit description of the property.)

"(9) At the date of the execution of his will J. B. Washburn was sixty-four years of age; his wife, Ada, was fifty-nine years of age. His full brother, J. S. Washburn, was sixty-six years of age; J. S. Washburn's wife, Cassie, was fifty-nine years of age. I find there was no reasonable expectancy of J. B. Washburn and Ada Washburn having any children; of J. S. Washburn and Cassie Washburn having any other children than those already born.

"(10) I find that J. B. Washburn spent his lifetime in the occupation of a farmer; that he had only a common school education; that he was unlearned in the law; that he never held a public office; and that the language of his will hereinbefore copied is the language of J. B. Washburn. The will was written by Miss Ellen Victery, an attorney.

"(11) I find, both from his will and from the surrounding facts and circumstances, that J. B. Washburn did not intend to use the word 'heirs' in a technical sense; that he intended to use it in the popular sense; that he intended the word 'heirs' to be 'children'; that he intended by the residuary clause in Section Three of his will that his property should go to the children

of his full brother, J. S. Washburn, in accordance with the terms of his will.

"(12) I find it was the intention of J. B. Washburn by his will to encompass, deal with, dispose of, all of his property, real, personal, separate and community, including all the community property of himself and Ada Washburn that had been accumulated during the marriage relationship of himself and Ada Washburn.

"(13) I find that J. B. Washburn did not intend to deal only with his one-half interest in the community property of himself and his wife, Ada, but to dispose of, deal with and pass title in accordance with the terms of his will to all the community property of both himself and Ada Washburn.

"(14) I find it was the intention of J. B. Washburn to die testate.

"(15) I find, both from the will of J. B. Washburn and from the surrounding facts and circumstances, that J. B. Washburn intended to require Ada Washburn to elect whether she would take title to all of his property, real and personal, separate and community, in accordance with the terms and provisions of his will.

"(16) I find that the right, title and estate vested in Ada Washburn by the terms and provisions of the will of J. B. Washburn were different, inconsistent and in some instances less than the rights, titles and estates which Ada Washburn would have acquired by descent and distribution in and to the separate real property of J. B. Washburn, and in and to the community property of J. B. Washburn and Ada Washburn, Ada Washburn would have taken only an undivided one-half interest in the 715 acres of real property; would have taken the full title to, as well as the revenue from, the United States Government Bonds in the sum of $25,000.00, and other interests reflected by the will and by the testimony.

"(17) I find as a fact that Ada Washburn actually elected to take under the will of J. B. Washburn; that she actually in fact did take, handle, use and possess all of the real and personal, separate and community property of J. B. Washburn and of J. B. Washburn and herself, in exact accordance

with the terms and provisions of the will of J. B. Washburn; that she leased the entire 852 acres of real property, as well as the improved town lots in the City of Teague, for agricultural and renting purposes in accordance with their adaptability; that she leased the entire 852 acres, including both the separate realty and the community realty of herself and J. B. Washburn, on numerous occasions, in numerous oil and gas leases, in which she expressly recited that she did not 'purport to own fee simple title * * * but only a life estate interest'; that she collected the rentals for agricultural use; the rentals for the use of the improved lots and houses in the City of Teague; the bonus and rentals from the numerous and sundry oil, gas and mineral leases from the entire 852 acres; that she rented the entire 852 acres, as well as the town lots and improvements in Teague, consistent with the estate vested in her under the will of J. B. Washburn; that in her inheritance tax return she specially listed the United States Government bonds in the sum of $25,000.-00, and recited: 'The interest of such bonds, however, being given to Ada Washburn, wife of deceased, for her use and support during her lifetime'; recited that the children of J. S. Washburn were 'given and bequeathed $25,000.00 worth of United States Government Bonds'; actually accepted the interest only from the United States Government Bonds; never asserted any title to the corpus of those bonds; permitted the bonds to remain with the executors, as directed by the will, and many other facts.

"(18) I find as a fact that Ada Washburn accepted benefits from the real and personal property as devised by the will of J. B. Washburn, to which she would not have otherwise been entitled, except under the terms and provisions of the will. These benefits consisted of agricultural rentals, bonuses on oil and gas leases, rentals on oil and gas leases, and others reflected by the evidence.

"(19) I find that Ada Washburn never asserted fee simple title to any of the community real estate of herself and J. B. Washburn, but only the life estate vested in her by the will of J. B. Washburn; that she asserted full fee simple title to only that part of the community personal property of herself and J. B. Washburn which was so vested in her by the will of J. B. Washburn; that she never asserted full fee simple title to that part of the community personal property of herself and J. B. Washburn which was excluded from her by the terms of the will of J. B. Washburn; notwithstanding had she renounced all rights under the will of J. B. Washburn, she would have been entitled to full fee simple title to all of the community real estate and to all of the community personal property of herself and J. B. Washburn. Article 2578, R.S.1925.

"(20) I find that through seventeen years from the death of J. B. Washburn in 1932 to the death of Ada Washburn in 1949 that Ada Washburn consistently acted, used and received benefits from all of the separate real property and all of the community real and personal property of herself and J. B. Washburn, in precise accordance with the terms of the will, and that she made a practical interpretation and construction of the will of J. B. Washburn to vest in her the title to the personal community property that is vested in her by the will; a life estate only in all of the real property, separate and community; and the receipt of the interest only from the United States Government Bonds in the sum of $25,000.-00, and other rights consistent with the terms and provisions of the will of J. B. Washburn.

"(21) I find that by her acts and conduct Ada Washburn has placed a practical interpretation and construction upon the will of J. B. Washburn to the effect that she understood that he intended to use the word 'heirs' in a nontechnical and popular sense; that J. B. Washburn intended that the word 'heirs' should mean 'children'; and that the children of J. S. Washburn should receive the residuary estate of J. B. Washburn upon the termination of her life estate, and the other benefits which she directly received under the terms of the will of J. B. Washburn.

"(22) I find that there may have been other considerations than the value of the

estate of J. B. Washburn or the relative values of the right and estate that Ada Washburn might have taken under the will or outside of the will that may have prompted her to make the election which she did.

"(23) I find that all of the oil, gas and mineral leases executed by Ada Washburn subsequent to May 27, 1932, and prior to her death on June 28, 1949, are now terminated for failure to pay rentals and for failure to drill wells.

"(24) I find that on the 26th day of September, 1949, the plaintiffs executed a written agreement with their attorney, Bowlen Bond, in which they agreed:

" 'For and in consideration of the services rendered for us by our said attorney, for all future services to be rendered herein by him for us, we hereby request the judgment of the District Court in said cause hereinabove referred to to fix the fees of our said attorney for his services herein rendered, and to be rendered, which said fee shall be fixed by said court at the conclusion of said trial and upon the rendition of a decree partitioning and fixing the interests in the real and personal property belonging to the estate of the said J. B. Washburn, deceased.'

"The said Bowlen Bond assigned an undivided one-half interest in said agreement to C. R. Winn and Geo. A. Terry, practicing attorneys at the Dallas Bar. I have heard evidence in the presence of the plaintiffs as to the amount and volume of work done by the attorneys representing the plaintiffs. I have heard the statement of the attorneys as to the fee that would reasonably compensate them for the services already rendered and those that may be rendered in the future; have inquired of the plaintiffs if such fees were agreeable to them, to which they assented in my presence. I, therefore, find that the attorneys be paid the sum of $10,000.00 in cash from the proceeds of the United States Government Bonds hereinabove described, and that in addition thereto they be vested with an undivided one-third (⅓) interest in and to the 852 acres of land that is described in the pleadings and in the judgment herein, together with an undivided one-third (⅓) interest in the three town lots and the improvements located thereon in the City of Teague.

"I find that the attorneys would have been paid these fees for other work which they would have been engaged upon during the time they were preparing and trying this cause; that said fees are reasonable and customary.

"I find that the plaintiffs are not financially able to pay the attorneys' fees of their attorneys except out of the property which they recover under this judgment.

"Conclusions of Law

"(1) The will of J. B. Washburn must be construed by the Court so as to ascertain the true intention of the testator. It is my construction of the will of J. B. Washburn that he intended that his wife, Ada Washburn, should make an election; that the election should be that she would take under the will; that he was intending that all of his separate property and all the property of the community estate of himself and Ada Washburn, both real and personal, should pass under the will. Packard v. De Miranda [Tex.Civ.App.], 123 S.W. 710.

"(2) Where there are two constructions possible to be given to a will, the Court must give it that construction which will prevent intestacy. It is my conclusion that the will of J. B. Washburn must be given that construction which will allow him to die testate. It is my conclusion that as a matter of law he intended to die testate. Booth v. Wheat [Tex.Civ.App.], 211 S.W. 2d 577; Hunt v. Carroll [Tex.Civ.App.], 157 S.W.2d 429; Kuehn v. Bremer [Tex. Civ.App.], 132 S.W.2d 295.

"(3) It is my conclusion that, as a matter of law, J. B. Washburn did not use the word 'heirs' in his will in a technical sense. He intended that the word 'heirs' should be 'children'. He did not intend that he should die intestate, or that his will would lapse for lack of beneficiaries simply because J. S. Washburn might be alive at the time that J. B. Washburn died, or at the time the life tenant, Ada Washburn, might die. Under the will itself, separate and apart from the surrounding facts and

circumstances, it is my conclusion that the word 'heirs' of J. S. Washburn in the will of J. B. Washburn was intended by J. B. Washburn to mean 'children' of J. S. Washburn. Furthermore, under the surrounding facts and circumstances, it is my conclusion that the word 'heirs' was not intended to be used in a technical sense, but was intended by J. B. Washburn to mean 'children' of his full brother, J. S. Washburn. I am constrained to follow the tendency of the decisions of this state, which have consistently construed the word 'heirs' to mean 'children' in order to avoid the enforcement of a rule that would defeat the evident intention of J. B. Washburn to die testate; that would defeat the investment of the title to his property in the children of J. S. Washburn. Federal Land Bank of Houston v. Little, 130 Tex. 173, 107 S.W.2d 374; Roberts v. Chisum [Tex.Civ.App.], 238 S.W.2d 822; Hunting v. Jones [Tex.Com.App.], 215 S.W. 959; Simonton v. White, 93 Tex. 50, 53 S.W. 339.

"(4) It is the duty of the Court to so construe the will of J. B. Washburn so as to harmonize its provisions, rather than throw them in conflict. To give effect to the word 'heirs' as 'children' harmonizes all the terms and provisions of the will. To give strict technical effect to the word 'heirs' would defeat the evident intention of J. B. Washburn;

"(a) to die testate;

"(b) To vest the title to his property in the children of J. S. Washburn.

"To give strict technical effect to the word 'heirs' would defeat the evident intention of J. B. Washburn, by:

"(a) Causing a part of his property to be vested in his half brothers and sisters and their heirs; whereas Clause Four of the will expressly excludes that; and,

"(b) Vesting a large part of his separate and community property, both real and personal, in the heirs of Ada Washburn—an intention nowhere evidenced either by the surrounding facts and circumstances or in the will itself.

Hunting v. Jones [Tex.Com.App.], 215 S.W. 959.

"(5) It is my conclusion that as a matter of law Ada Washburn, by her acts and conduct subsequent to the death of J. B. Washburn, has placed a practical interpretation and construction upon the will of J. B. Washburn, consistent with my findings and conclusions herein—that is, that the residuary estate in the separate real property and in the community real and personal property not expressly vested in Ada Washburn should pass to and be vested in the children of J. S. Washburn. This construction and interpretation is reflected not only in the preliminary inheritance tax report sworn to by Ada Washburn on October 14, 1932, within five months after the death of J. B. Washburn, but is further reflected in numerous oil and gas leases executed through the course of the seventeen years during which Ada Washburn maintained the use and control of all the real property, both separate and community, in which oil and gas leases Ada Washburn required that the children of J. S. Washburn execute similar oil and gas leases, and in other acts and conduct of Ada Washburn, reflected in the evidence. Ada Washburn having placed a practical construction on the will to the effect that the word 'heirs' was intended to be 'children'; that J. B. Washburn intended that the children of J. S. Washburn should receive the residuary estate as provided in Clause Three of his will, requires that I follow that practical interpretation and construction. Baldwin v. Baldwin, 134 Tex. 428, 135 S.W.2d 92. The devisees and heirs of Ada Washburn, claiming through her, are bound by the practical interpretation and construction placed upon the will by Ada Washburn.

"(6) It is my conclusion that as a matter of law the will of J. B. Washburn on its face required Ada Washburn to elect whether she would take under the will or renounce it. The express reservation of the United States Government bonds in the sum of $25,000.00, all of which was community property; all of which would have been vested in Ada Washburn as the surviving wife of J. B. Washburn under Arti-

cle 2578, together with the other facts and circumstances appearing in the will, required Ada Washburn to elect. Bumpass v. Johnson [Tex.Com.App.], 285 S.W. 272; 290 S.W. 739 (on rehearing); Chace v. Gregg, 88 Tex. 552, 32 S.W. 520; Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620; Smith v. Butler, 85 Tex. 126, 19 S.W. 1083; Chadwick v. Bristow [Tex.Civ.App.], 204 S.W.2d 65, affirmed 146 Tex. 481, 208 S.W.2d 888.

"I conclude that as a matter of law, under the undisputed facts in this record and the foregoing findings of fact herein made, Ada Washburn actually elected to and did actually take her rights, titles and interests in the property of J. B. Washburn and the property of herself and J. B. Washburn in strict accordance with the terms and provisions of the will of J. B. Washburn, dated December 23, 1931. By the undisputed facts and by the foregoing findings of fact, to support this conclusion of law, it is shown:

"(a) That Ada Washburn actually used, kept possession of, and exercised control over, all of the real estate of J. B. Washburn, both separate and community, for all of the time from the date of his death on May 27, 1932, until the date of her death on June 28, 1949. She would never have had the right to exercise any control over one-half of the 715 acres of separate real property, except the right, use, possession and estate that was given her under the terms of the will of J. B. Washburn.

"(b) Ada Washburn paid ad valorem taxes on all of the real estate, both separate and community for the entire period from the death of J. B. Washburn in 1932 until her death in 1949.

"(c) Ada Washburn collected the agricultural rents and the oil and gas lease rentals and the oil and gas lease bonuses from all of the real property, both separate and community, including the entire 852 acres.

"(d) Ada Washburn executed and delivered oil, gas and mineral leases covering and describing the entire 852 acres of land, both separate and community, in most instances requiring that a similar lease be procured from the children of J. S. Washburn simultaneous with the execution of the lease by Ada Washburn.

"(e) Ada Washburn consented to the provisions of the will of J. B. Washburn that the United States Government Bonds, in the amount of $25,000.00, be retained and possessed by the executors designated under the will; consented to receive only the interest from those bonds, rather than to demand the principal or corpus of the bonds, to which she would have been entitled as community personal property had she not elected to take under the will of J. B. Washburn.

"(f) Ada Washburn accepted the cash devised to her; accepted the vendor's lien notes devised to her; in strict accordance with the terms and provisions of the will of J. B. Washburn.

"(7) By the acceptance of benefits by Ada Washburn, which she received exclusively through the will of J. B. Washburn, which benefits she would not have otherwise been entitled to, Ada Washburn and her successors are conclusively estopped to deny that she elected to take under the will of J. B. Washburn. Bumpass v. Johnson, [Tex.Com.App.], 285 S.W. 272; 290 S.W. 739 (on rehearing); Chace v. Gregg, 88 Tex. 552, 32 S.W. 520; Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620.

"(8) It is my conclusion that as a matter of law the election of Ada Washburn to take under the will; the acceptance of benefits, which completely estops her to now deny that she elected to take under the will, prevents Ada Washburn from taking as an heir under J. B. Washburn. Chadwick v. Bristow, 146 Tex. 481, 208 S.W.2d 888.

"(9) Ada Washburn placed a practical interpretation and construction upon the will of J. B. Washburn to the effect that she was required to make an election; that she did actually elect; and I am bound by this practical interpretation and construc-

tion. Baldwin v. Baldwin, 134 Tex. 428, 135 S.W.2d 92."

Thereafter the court filed what he designated "Reply of Court to Request of Defendants for Additional Findings of Fact and Exceptions to Conclusions of Law", as follows:

"1. The court overrules the exceptions made by said defendants to his findings of fact No. 9, and says that such findings of fact is supported by the evidence, is a proper finding and will not be amended. The amendment requested is not supported by the evidence.

"2. The Court overrules the exceptions of said defendants to his finding of fact No. 10, and says that said finding of fact is supported by the testimony, is proper finding, and does not need to be amended as requested by said defendants. The matter has heretofore been covered in the original findings of fact.

"3. The exceptions of said defendants to finding of fact No. 11 is now overruled. This finding is supported by direct and circumstantial evidence, and is a proper finding in this case.

"4. The exceptions of said defendants to finding of fact No. 21 is now overruled. This finding is amply supported by the evidence, both direct and circumstantial.

"5. At the request of said defendants, I find as a fact that J. S. Washburn, Henry J. Washburn, Roy W. Washburn and Nora Washburn Coleman died intestate; that there was no administration had upon their estates; and that there was no necessity for said administration.

"6. I do not find as a fact that the Testator J. B. Washburn expected his brother J. S. Washburn to predecease Testator's wife, Ada Washburn.

"7. The findings of fact requested by said defendants in Paragraph II, Sec. (3) are not supported by the evidence in this case, are not true, and I refuse to make such findings as therein requested.

"8. Findings of fact requested in Paragraph II, Sec. (4) are not in accord with the evidence as the Court finds same to be, since the Court finds that it was not the intention of J. B. Washburn to disinherit his only full brother, J. S. Washburn, regardless of whether said brother be living upon the death of Testator's wife, Ada Washburn.

"II.

"Said defendants except to the conclusions of law heretofore filed in this case, but make no request for additional conclusions of law. All exceptions made by said defendants to said conclusions of law heretofore filed are now overruled, and the request to strike any portion of said conclusions is here now denied."

Thereafter the court made the following findings:

"This is in correction of Reply heretofore made by the Court to exceptions and objections and request for additional findings made by David Coleman et al., through their attorneys, Dalton & Moore, and filed in this court on May 22, 1952, to-wit:

"I.

"Sec. 8 of Paragraph I of said findings reads as follows:

" 'Findings of fact requested in Paragraph II, Sec. (4) are not in accord with the evidence as the Court finds same to be since the Court finds that it was not the intention of J. B. Washburn to disinherit his only full brother, J. S. Washburn, regardless of whether said brother be living upon the death of Testator's wife, Ada Washburn.';

and same should read, as follows:

" 'Findings of fact requested in Paragraph II, Sec. (4) are not in accord with the evidence as the Court finds same to be since the Court finds that it was the intention of J. B. Washburn to disinherit his only full brother, J. S. Washburn, regardless of whether said brother be living upon the death of Testator's wife, Ada Washburn.',

and said findings heretofore made by this Court on said March 22, 1952, are here now amended this date to read as last above stated, omitting the word 'not', and showing that it was the intention of J. B. Washburn to disinherit his full brother, J. S. Washburn.

"Except as amended herein, the findings and rulings as heretofore made in said instrument of March 22, 1952 are unchanged and are to remain in force and effect."

The decree of the court is in accord with the findings of fact and conclusions of law.

The following short statement will be helpful to an understanding of this case. Prior to 1898, J. B. Washburn (a bachelor), the testator, came from Dadeville, Alabama, to Freestone County, Texas. In December, 1919, he intermarried with Ada Bradshaw in Limestone County, Texas. No children were born of this marriage. At the time of the marriage testator was fifty-two years old and his wife was forty-seven. The testator died testate in May, 1932 at the age of sixty-four. His wife survived him and died testate on June 28, 1949, at the age of seventy-six. Neither the testator nor his wife had any children by any previous marriages, nor did they adopt any children. The testator's family in Dadeville, Alabama, consisted of J. S. Washburn, his only full brother, who died January 7, 1950, and who had six children, five girls and one boy, who survived him. When the testator made his will on December 23, 1931 all of the children of J. S. Washburn were living; J. S. Washburn was sixty-six years of age and his wife was fifty-nine years old. These children of the full brother are the plaintiffs in this cause and they claim title to the 852 acres of land and to the personal property awarded to them in the decree by virtue of the terms of the will of J. B. Washburn and because his wife elected to take under the will. The testator had four half brothers and one half sister, namely Henry J. Washburn, who died May 9, 1926, leaving children surviving him; Albert B. Washburn, now living; Nora Washburn Coleman, who died July 9, 1895 and left children; Joe W. Washburn, who is now living; and Ernest S. Washburn, who is now living. The living half brothers, together with the children of deceased half brother and the children of the deceased half sister constitute one set of defendants and they are designated for convenience as the "Washburn defendants", and it is their contention that the will of the testator is ineffective and the property must be distributed under the laws of descent and distribution. The other defendants are the devisees and descendants of Ada Bradshaw Washburn (who died testate and whose will has been duly admitted to probate), wife of the testator, and they are designated for convenience as the "Bradshaw defendants", and it is their contention that the will of the testator must be completely disregarded, and that the 852 acres of land and the $25,000 government bonds must be distributed under the laws of descent and distribution. As we understand the briefs of all the parties, they are in agreement that 715 acres of real estate here involved was the separate property of the testator; that 137 acres was community property of the testator and his wife Ada, together with the town lots in the City of Teague, and the United States Government Bonds in the amount of $25,000, with the accrued interest thereon, and that these constitute the subject matter of this lawsuit. All of the foregoing property was awarded in the decree to the plaintiffs, who were the children of J. S. Washburn, the only full brother of the testator, the decree holding in effect that the word "heirs" used in the third paragraph of the will meant "children" of J. S. Washburn and that his widow Ada elected to take under her husband's will and that by reason thereof the will disposed of all the separate property and community property of the testator and his surviving widow on hand at the time of the death of testator. Our view of the record here made is that two major questions are presented: (1) Did the court err in holding that the word "heirs" used in the third paragraph of the will meant the children of J. S. Washburn? (2) Did the court err in holding that the widow elected to take under the will of the testator? Other questions are presented, but if the findings of the court and the conclusions of law and the decree entered, in accord with the court's views on the foregoing matters are correct, all other questions pass out of the case.

The Bradshaw defendants assail the decree entered on ten points. Point 5 is to the effect that the court erred in holding that the testator meant "children" when

he used the word "heirs" of J. S. Washburn, because there is no evidence to support same, and Point 6 is to the effect that such finding is not supported by sufficient evidence. Point 7 is to the effect that the court erred in holding that Ada Washburn had placed a practical construction on the will of her husband and that she took a life estate only in the bonds and real estate and that the remainder vested in the children of J. S. Washburn, and they further contend that such finding is contrary to the evidence and that the evidence is insufficient to sustain such finding. The foregoing errors are substantially assigned by the Washburn defendants. Their brief contains a total of fifteen points, but because of our views hereinafter expressed we do not deem it necessary to state them. We overrule each of these points.

■ Since this cause was tried without the aid of a jury we are bound by the following rule: "The rule is well settled that the judgment of a trial court will not be set aside if there is any evidence of a probative nature to support it and that a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings." See Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972, 977; Woodward v. Ortiz, Tex.Sup., 237 S.W.2d 286. See also cases collated under 4 Texas Digest, Appeal and Error, ☞1010(1). We have carefully considered all of the testimony tendered in this cause and it is our view that it is ample to sustain the findings of the trial court. We are also in accord with the conclusions of law made by the trial court. The decisions cited by the trial court in his conclusions of law are applicable and controlling. No rule is better settled than that in construing a will all of its provisions must be looked to to ascertain the real intention of the testator and if this can be ascertained from

the language of the instrument, then any particular paragraph, sentence or phrase which, if construed alone, might indicate a contrary intention must yield to the intention manifested by the whole instrument. McMurray v. Stanley, 1887, 69 Tex. 227, 6 S.W. 412. See also Colton v. Colton, 1888, 127 U.S. 300, 8 S.Ct. 1164, 32 L.Ed. 138. The rule as to ascertaining the intention of the testator as announced in McMurray v. Stanley, supra, and Colton v. Colton, supra, has been consistently followed by our Texas courts. The opinion of our Supreme Court in Federal Land Bank of Houston v. Little, 130 Tex. 173, 107 S.W.2d 374, is peculiarly applicable to the facts of the case at bar and is controlling. This opinion by Justice Smedley is clear and comprehensive and cites and reviews in part many of the leading and controlling cases in Texas applicable to the factual situation here presented, and a careful reading of this case, together with the other authorities here cited, answers adversely each of the contentions raised by appellants. Believing the foregoing authorities are applicable and controlling, it is our view that the testator used the word "heir" in the nontechnical sense, and by reason thereof the rule in Shelley's case is not applicable here. See also Thompson v. Cragg, 24 Tex. 582, point page 596; Davis v. First National Bank of Waco, Tex.Civ.App., 145 S.W.2d 707, point second column page 711, affirmed 139 Tex. 36, 161 S.W.2d 467, 144 A.L.R. 1. We are also of the view that testator's widow elected to take under the will. See cases cited by the trial court in its conclusions of law. Being of this view, all of the other questions raised by appellants become immaterial and pass out of the case and each of them is overruled.

Accordingly, the judgment of the trial court is affirmed.

McDONALD, C. J., took no part in the consideration and disposition of this case.