Anna RAMM et al., Appellants,

v.

The ESTATE of Joe RAMM, Deceased, et al., Appellees.

No. 10567.

Court of Civil Appeals of Texas.

Austin.

June 11, 1958.

Rehearing Denied July 2, 1958.

Charles L. Krueger, R. C. Wilson, Austin, for appellants.

Miller & Allen, Columbus, for appellees.

GRAY, Justice.

Appellants, Anna Ramm and Henry Ramm, sued appellees, Adele Ramm and Elton Konecek, to recover property, or its equivalent in damages, belonging to the estate of Joe Ramm, Deceased. They alleged that during his lifetime Joe agreed with Anna that if she would make a will leaving her property to him and Henry Ramm that he (Joe) would make a will leaving his property to her and Henry; that Anna accepted Joe's proposal; that the proposed wills were made, and that Joe breached the agreement by making a subsequent will leaving his property to appellees.

Appellants are sister and brother respectively of Joe Ramm, Deceased. Appellee, Adele Ramm is the surviving wife of a deceased brother, Emil Ramm, and appellee Elton Konecek is a nephew of Adele Ramm but is not related to the other parties to this suit.

Anna and Joe were each unmarried. For many years Anna had lived and worked in the home of Mr. and Mrs. D. C.

Hillboldt. Joe had lived with Emil on the "Old Ramm Homestead" which they farmed until Emil's death. Thereafter Joe continued to reside on the farm but it appears that he was in failing health. It further appears that Joe, Anna and Henry were the only survivors of their immediate family; that they were very friendly to each other; that Joe and Henry resided near the Hillboldts and that they all often visited together in that home. In fact Joe stayed there for several weeks while he was under the care of a doctor. Henry Ramm was married and had a family.

Appellants alleged that on January 4, 1955, Joe came to see Anna at the Hillboldt home and proposed that he would make a will leaving his property to her and Henry if she would make a will leaving her property to him and Henry; that Anna agreed to the proposal, and that thereupon they each made a will in keeping with the agreement. There was attached to the petition as exhibits and later introduced in evidence the following instruments:

"Jan 4, 1955

"I, Joe Ramm wish to will all my property to my brother Henry and sister Anna Ramm

/s/ Joe Ramm

"Witnesses:

Mrs. D. C. Hillboldt
Mrs. Chas. Koy

"I, Anna Ramm wish to will all my property to my 2 brothers Henry and Joe Ramm

Anna Ramm

"Witnesses:

Mrs. D. C. Hillboldt
Mrs. Chas. Koy"

Joe Ramm died July 6, 1956, and left a will dated February 24, 1956, whereby he left his property to Adele Ramm. This will was filed for probate and Adele Ramm had taken charge of Joe's property claiming the same as her own under the terms

of the will. She also claimed livestock on the farm as her own independently of the will. Prior to his death but after January 4, 1955, Joe gave Elton Konecek two checks amounting to $2,000.

Four special issues were submitted to a jury. We quote issue one and the jury's answer thereto:

"Do you find from a preponderance of the evidence that on or about January 4, 1955, Joe Ramm proposed to Plaintiff, Anna Ramm, that he would make a will under the terms of which he would give unto her and their brother, Henry Ramm, all of his property, which he owned and possessed, if she would make a will to him and their brother, Henry Ramm, of all of her property?

"Answer 'yes' or 'no' as you find the facts to be.

"Answer: No."

The jury was instructed to answer issue two only if issue one was answered "yes." It asked if Anna accepted Joe's proposal and was not answered. Issue three asked if during his lifetime Joe made a gift of $2,000 to Elton Konecek. The jury answered "Yes."

Following an instruction to answer issue four only if issue three was answered "No," the jury was asked to find the reasonable value of the services, if any, rendered by Elton Konecek to Joe Ramm during his lifetime. The issue was not answered.

A judgment denying appellants any recovery was rendered on the above jury findings.

Appellants here complain that the trial court erred: in submitting issue one because there was no evidence to justify its submission since the evidence shows that Joe and Anna made the alleged agreement and that appellants were entitled to an instructed verdict, and in submitting issue three because:

"Joe Ramm was not authorized to give any of his property away since it became impressed with a trust at the time he made and entered into the agreement with Anna for his benefit and Henry's, as well as for Anna's and Henry Ramm's benefit."

Appellants further say: that they are entitled to a new trial because all the evidence shows that the agreement sued on was made, and that the trial court erred in overruling their motion for judgment non obstante veredicto.

■ We will first direct our attention to issue one and the jury's answer thereto. In doing so we must consider only the evidence tending to support the jury's answer and disregard the evidence that is contrary thereto. Eaton v. Husted, 141 Tex. 349, 172 S.W.2d 493, citing Briscoe v. Bright's Adm'r, Tex.Com.App., 231 S.W. 1082, a contract case.

■ At about 9 or 10 o'clock on the morning of January 4, 1955, Henry Ramm, his son Otto and Joe Ramm came in Henry's car to the Hillboldt residence where Anna Ramm was, and for some thirty years had been, living as an employee of the Hillboldts. At that time there was present at the residence: Mr. and Mrs. Hillboldt, Anna Ramm and Mrs. Charles Koy who was then doing the housework. These parties were all well acquainted and friendly with each other. The parties had lunch together and remained at the Hillboldt residence until about 3 o'clock in the afternoon when they all went to Sealy, Texas, which was a town nearby. Joe, Henry and Otto went in Henry's car and the other parties went in Mrs. Hillboldt's car.

We do not attach any particular importance to the visit to the Hillboldt home above mentioned for the reason that the evidence shows such visits were common occurrences. Otto Ramm testified that he had never before seen the two instruments above set out and did not specifically re-

call being at the Hillboldt home January 4, 1955, he said: "We have been there so often."

During the time that the parties were at the Hillboldt home on January 4, 1955, Joe and Anna executed the instruments, supra.

With reference to the above instruments D. C. Hillboldt was asked and testified:

"Q. Now you referred to they telling you, did you mean by that Joe Ramm and Anna Ramm? A. They told me what they wanted done.

"Mr. Allen: I am not sure who they are yet.

"The Court: He just stated who they were.

"A. Joe Ramm and his sister, Anna, that stays with us. You want me to go ahead and tell what happened?

"Q. I want you to tell whatever they told you and you heard them say in the presence of each other to you. A. They told me they wanted to make a will and Joe told me he wanted to make a will and will his sister, Anna, and his brother, Henry, his property in case he died before Anna does, and she told me at the same time she wanted to will her property to Joe and her brother, Henry, in case she died first. Then she asked me did I have an idea how to go about it. I said, well,—I wrote those forms for them and they taken and copied them and signed them.

*    *    *    *    *    *

"Q. Prior to that date, January 4, 1955, I believe I asked you this before, I want to clarify the matter, did you hear Joe and Anna Ramm have a conversation before the date this was done about making a will? A. No.

"Q. That was the first date? A. I didn't hear it directly, but—

"Q. This was the first day you heard it discussed by them in your presence? A. In my presence.

*    *    *    *    *    *

"Q. Do you now have any independent recollection of anything that Joe said to Anna— A. No.

"Q. —or Anna said to Joe in your presence that you could quote? A. No, sir. When they told me what they wanted, I asked her and asked Joe is that what they wanted and they both answered yes. I wrote the form and read it to them."

Mrs. D. C. Hillboldt, one of the witnesses to the above instruments, was asked and testified:

"Q. Mrs. Hillboldt, I want to ask you this: Had you heard any talk among these people before these were signed? Had they talked about this thing where you could hear them? A. Joe Ramm and Anna Ramm?

"Q. Yes. A. Yes, they had been talking about making a will.

"Q. How long had that been going on? Was that just that day? A. Oh, no, it was before then too; they talked about making a will before then; I wouldn't know just what day or how long before then I wouldn't know.

"Q. Is it your best recollection that they had been talking about it for a few days or for a few weeks or a few months? A. Oh, I imagine it had been a few weeks, maybe a few months; I tell you I just wouldn't know.

*    *    *    *    *    *

"Q. Mrs. Hillboldt, what they are *tying* to get at: don't state what Anna said about her mother and father, just what Anna said. A. They said they would like to leave the old Ramm property in their own family. That is what she said.

"Q. What did Henry say? A. Henry was satisfied with that too.

"Q. What did Joe state? A. Joe said the same thing.

\* \* \* \* \* \*

"Q. Did Joe Ramm say anything about what he would do with that property if Anna would do something else? A. No, he sure didn't, not that I know of.

"Q. Did Anna say anything about what she would do? A. No, nothing more than—she said nothing more than she was going to leave her property to her brothers. That is all she ever did say.

\* \* \* \* \* \*

"Q. Will you tell the jury what you heard Joe Ramm tell his sister, Anna, on that Tuesday about making a will? A. I wouldn't know I heard him say anything more than, 'Let's get through making that will so we will have it over with.' That is all I heard him say.

"Q. Will you tell this Court and jury then what Anna said back to Joe about making a will? A. She said that was all right with her; have it made and get through with it.

"Q. Will you tell this Court and jury what Henry said? A. I don't think Henry said anything. I don't remember him saying anything. I don't remember him saying anything."

The effect of Mrs. Charles Koy's testimony was that she did not hear any conversation between Joe and Anna. She said that they asked her to sign the instruments, as a witness which she did.

Portions of the depositions of Anna Ramm were introduced in evidence however only the following is in any way material here:

"Q. I will ask you if you remember Joe, your brother, coming to talk with you some time in the early part of January, 1955, and—you all talked about making a will? A. Yes, sir.

"Q. Was that done here at Mr. Hillboldt's house? A. Yes.

"Q. That is where that conversation took place, that is where you all talked together? A. Yes, sure.

"Q. I hand you a paper here and ask you to look at it, and please tell me if you recognize that instrument? That is a picture of an instrument. A. Yes, I see.

"Q. Have you ever seen that before? A. No, not this paper.

"Q. No, not this picture, but a paper just like that. A. Yes.

\* \* \* \* \* \*

"Q. Miss Anna, when your brother Joe and your brother Henry came that day you all had a visit, is that right? Just visited with each other? A. Yes.

"Q. Then discussed the making of the wills, is that correct? You and Joe and Henry had a conversation about making the will, is that correct? A. Yes."

Henry Ramm did not testify and the testimony of Otto throws no light on the present inquiry but principally related to personal property .on the "Old Ramm Homestead."

Joe and Anna jointly owned 235 acres of land which is referred to as the "Old Ramm Homestead." On June 6, 1956, they sold this property to George Mieth, who so far as the record shows was not related to the Ramms. This fact shows that they no doubt abandoned their desire to leave that property in the Ramm family for the sale was purely voluntary.

The evidence before us suggests that Joe and Anna considered the two instru-

ments supra as wills. We are not here concerned with a correct legal interpretation of those instruments but only with their probative effect as evidence of the alleged agreement. These instruments name the parties that Joe and Anna preferred as their respective beneficiaries but do not specify or refer to any agreement or condition. The most that the evidence of the witnesses and those instruments show is that Joe and Anna discussed making wills and leaving their property to named individuals but the evidence does not show any agreement between them to make a will leaving their property to named persons if the other would also make a will leaving his or her property to named persons. The evidence shows only that they each wanted to make a will. Moreover we think that the evidence of the close association of Joe, Anna and Henry, their friendliness to each other and the fact that they were the sole survivors of their immediate family was evidence that the jury could consider as influencing the naming of beneficiaries on January 4, 1955, independently of any agreement.

■ Appellants alleged that on January 4, 1955, Joe proposed to Anna

"that he would make a will under the terms of which he would give unto her and Henry Ramm all of his property which he owned and possessed if she would make a will giving unto him and Henry Ramm all of her property; * * *"

This under the evidence was a controverted issue. It was submitted to the jury and a finding adverse to appellants was made, and as we have demonstrated supra this finding is supported by the evidence. We are bound by the finding even though there may be conflicting testimony in the record. Clark v. National Life & Accident Ins. Co., 145 Tex. 575, 200 S.W.2d 820.

What we have said disposes of appellants' first point and because the alleged agreement is not shown the other points do not present error.

The judgment of the trial court is affirmed.

Affirmed.