**D. O. ATKINSON, Jr., et al., Appellants,**

v.

**Lucile SCHMIDT, Appellee.**

**No. 11930.**

Court of Civil Appeals of Texas, Austin.

June 21, 1972.

Wilson, Logan, Lear & Massey, Ralph Logan, Gregory V. Gossett, San Angelo, for appellants.

Kerr, Gayer & Gregg, Lloyd Kerr, San Angelo, for appellee.

PHILLIPS, Chief Justice.

Appellee Lucile Schmidt brought suit in trespass to try title against Appellants D. O. Atkinson, Jr. and other members of his family in the District Court of Tom Green County. Lucile Schmidt and D. O. Atkinson, Jr. are brother and sister.

Appellee based her claim to title in fee simple to the north 2,354 acres of the D. O. Atkinson, Sr. ranch in Tom Green County on two theories: first, that at the time her mother and father, Mary and D. O. Atkinson, Sr., executed similar wills in 1949, they entered into an oral contract concerning the disposition of their community property; and second, that the will of the mother, Mary Atkinson, disposed of the entire community interest on the land in question, and that by probating and accepting benefits under the will of her mother, her father, D. O. Atkinson, Sr., made an election and was therefore bound to allow the property to pass by the will of the mother.

Appellants answered "not guilty" and, under Tex.R.Civ.P. 790, they further answered that the extent of their claim to the land in question is a remainder interest in an undivided one half interest to the above mentioned acreage subject to the life estate of Appellee.

All parties are claiming title by and through D. O. Atkinson, Sr. and Mary Atkinson, husband and wife, who owned the land as part of their community estate.

Trial was had before the court and judgment was rendered for Appellee awarding the entire fee simple title in the land to Appellee. It is from this judgment that Appellants have perfected their appeal to this Court.

We affirm.

Appellants are before us on seven points of error. The first three, briefed together, are the error of the trial court in rendering judgment for Appellee and in failing to render judgment for Appellants for the reason that there was either no evidence or insufficient evidence that D. O. Atkinson, Sr. and Mary Atkinson at the time of the execution of the 1949 wills, contracted that they would not revoke these wills.

We overrule these points.

In 1949, Mary Atkinson executed a will of which the third paragraph reads as follows:

"THIRD: I give, devise and bequeath to my daughter LUCILLE SCHMIDT, subject to the hereinafter provisions, the title in fee to the North 2354 acres of the D. O. Atkinson Home Ranch containing 4,034 acres more or less, located south of Knickerbocker in Tom Green County, Texas."

The sixth paragraph of the will is as follows:

" . . . All of the property owned by my husband and myself is community property and it is my will and desire, and I hereby direct that all of said property shall remain intact so long as my husband, D. O. Atkinson, shall live, and neither of my children shall have authority, and are hereby prohibited from partitioning or in any manner dividing said real estate during the natural life of my said husband. It is my will and I further direct that my husband, D. O. Atkinson, shall, so long as he lives and during his natural life, have full and exclusive authority, and I hereby authorize my husband, D. O. Atkinson, and empower him to execute all oil, gas and mineral leases on any and all of my said real estate. . . ."

At the same time that Mary Atkinson made her will in 1949, D. O. Atkinson also made his will. These wills contained identical reciprocal provisions by each of the parties in favor of the other and they made the same dispositions of the same items of property, each in favor of the same persons.

Mary Atkinson died in 1956, and her will of 1949 was probated by D. O. Atkinson. At that time D. O. Atkinson had his attorney draw another will for him which was identical to his reciprocal will of 1949 with the exception of changing the executor.

As stated above, Mrs. Atkinson's will was probated on her husband's application. He qualified as its independent executor, filed an inventory of the community estate showing goats appraised at $400, yearling ewes at $1,600, live lambs at $800, cows at $400, and $6,234.87 in cash. This was Mrs. Atkinson's interest, all of which was given to him in her will. In addition, as such executor and exercising the exclusive authority given him by the will, he entered into a series of oil, gas and mineral leases on dates from 1958 to 1969 for considerations involving many thousands of dollars.

In 1963, D. O. Atkinson executed his last will and testament which devised to Appellee only a life estate in his community half of the land in question with remainder to her children if any, or the children of Appellant, D. O. Atkinson, Jr.

Both Appellants and Appellee agree that Appellee has title in fee simple to an undivided one half of the land under the provisions of the will of Mary Atkinson. At issue, however, is the title to the remaining undivided one half of the land. Appellee contends that she is the owner in fee simple of the remaining one half. Appellants contend that Appellee received title in fee simple to an undivided one half under the will of Mary Atkinson and only a life estate in the remaining one half under the will of D. O. Atkinson, Sr.

■ We cannot agree with Appellants' contention that there is no evidence or insufficient evidence that the senior Atkinsons intended to enter into a contract under their reciprocal wills made in 1949. Quite to the contrary, testimony at trial from the late B. W. Smith, the senior Atkinsons' attorney, who prepared all of the wills presently in issue, indicates that Mary and D. O. Atkinson, Sr. entered into an oral contract to dispose of their property as indicated in the reciprocal wills of 1949.

Mr. Smith testified that, "After Mr. and Mrs. Atkinson came into the office and we were seated then I, of course, asked them what they wanted or desired, and Mr. D. O. said, Mr. D. O. Atkinson said 'We have agreed on how we want our property to go and want you to prepare our wills for us' . . ."

Again Mr. B. W. Smith testified as follows:

"Q Judge, [meaning the witness] do you remember whether they said anything about an agreement that the 4,034 acre ranch would not be divided at any time during the life of the survivor?

A As I recall that, Mrs. Atkinson used some of the words that I put in this will about the division of that ranch during the lifetime of the survivor. I haven't taken time to pick them out. She used some of the words I thought were so good that I just put it in the will.

Q She give you those words in the presence of D. O. Atkinson?

A In the presence of D. O. Atkinson.

Q At the time when she did that they were telling you what their agreement on wills was, is that correct?

A That's right.

Q Did they say whether or not they wanted you to prepare a will for both of them?

A Yes, sir.

Q In accordance with that agreement?

A Yes, sir.

Q And did you?

A Yes, sir."

With respect to the second will B. W. Smith drew for D. O. Atkinson, Smith testified as follows:

"Q Now, after Mrs. Atkinson passed away in 1956 you drew the second will in 1957 for Mr. Oscar?

A That's right.

Q And that will is virtually the same as the will in 1949, with the exception that it named Lucille and D. O. as executors in place of Mrs. Atkinson?

A Lucille and D. O., Jr., as executors; yes, I believe that is right. Now, I don't know whether there's any other variance in there with reference to anything else or not, Ralph. I do know that's in there, but I will take your word on it, whatever you say.

Q I believe that's in substance the only difference.

A Whatever you say on it.

Q Naming somebody else as executor in the will.

A Okay.

Q And as a matter of fact wasn't that what Mr. Atkinson told you to do when he came in, was to prepare another will like his original will except name D. O. Jr. and Lucille as executors in place of Mrs. Atkinson?

A He told me he wanted to carry out the agreement, if it is called, whatever you call it, that name, he had with 'Mom' when he drew the other will."

In Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165 (1946), the Court held that one who relies upon a will as a contract has the burden of proving that the will is contractual as well as testamentary in character. Proof "may be made by the provisions of the will itself or by competent witnesses who testify to the agreement; and evidence as to declarations of the promisor, relations or conduct of the parties and other facts and circumstances, that tend to prove that an agreement was made, are admissible." Citing cases, 193 S.W.2d 167–168. The abovementioned testimony of D. O. Atkinson and B. W. Smith was competent testimony tending to prove that the parties also intended their wills to be a contract between them. In addition, in the terms of the identical wills, each bequeaths and devises all of the community property in question to Appellee. In other words, the wills treat the property of testators as one. As stated in *Nye* under similar facts: "A will like that could not have been made without agreement between the testators that it should be so made. Its very terms are evidence that an agreement was made, and they are entirely consistent with the testimony of the witness as to what the agreement was."

*Nye* continues:

"We need not determine whether the agreement between the husband and wife, pursuant to which the joint will was executed, was valid and enforceable against the wife when made. Interesting discussions of the validity of such contracts appear in Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395, 402–404, application for writ of error refused, and Johnson v. Durst, Tex.Civ.App., 115 S.W.2d 1000, 1004, 1005. The husband, R. T. Bradford, fully performed his contract. He died without having undertaken to revoke the joint will and without having attempted to make any disposition of the property in contravention of the agreement. The surviving wife, on her own application, caused the joint will to be probated as the last will and testament of her deceased husband and qualified as executrix under the will. Thereupon the contract, even if it had theretofore been voidable (and as to that we express no opinion), became obligatory upon her."

Appellants cite two cases in support of their first three points, namely, Ramm et al. v. Ramm's Estate, 314 S.W.2d 847 (Tex. Civ.App. Austin 1958, writ ref'd n. r. e.)

and Magids v. American Title Insurance Company, et al., 473 S.W.2d 460 (Tex. Sup.1971). These cases are of no assistance. In *Ramm* we have a different set of facts. The jury found that there was no contract between the testators. This Court affirmed the trial court's judgment entered upon the jury's finding, stating that the evidence disclosed only that each testator wanted to make a will, that their friendliness for each other and the further fact that they were the sole survivors of their immediate family were evidence that the jury could consider as influencing the naming of beneficiaries in the will, independently of any agreement.

In *Magids* the Court stated the crucial question to be whether the Magids made an oral agreement to dispose of their community property at their respective deaths or at the death of the first of them, in the manner set forth in the wills, and this was not asked. The Court went on to state that this failure was understandable because there was no evidence of this type in support of a contract between the testators. Such is not the case here.

In *Magids* the Court also stated that although the wills were on an identical form prepared by the same scrivener and signed at the same time before the same witnesses, they were entirely separate wills dealing only with each testator's property; neither will attempted to deal with the entire community estate of both testators in a manner that would affect the survivor's one half interest or put the survivor to an election whether to take under the will. These facts are not present in this case. In other words, the Court found in *Magids* the evidence would support only an agreement to make identical wills and nothing more.

Nor are we impressed with the contention that the clause in the will providing that neither of the children shall partition the real estate during the life of D. O. Atkinson would have been useless if the part of the estate in question was intended to go to Appellee. There are several answers

to this argument. One answer is that property other than that before us was devised in the will and that only the testator's individual interest was devised in some instances.

We hold that the oral testimony quoted above and the provisions of the wills were sufficient evidence to affirm the judgment of the trial court that the death of Mrs. Atkinson put effective revocation beyond the legal right and power of D. O. Atkinson. Weidner v. Crowther et al., 157 Tex. 240, 301 S.W.2d 621 (1957).

Appellants' fourth, fifth and sixth points, briefed together, are the error of the court in failing to render judgment for Appellants for the reason that the 1949 will of Mary Atkinson, as a matter of law, did not dispose of any of the community interest of her husband, D. O. Atkinson, Sr., to the land in question, and therefore D. O. Atkinson, Sr. was not put to any election; this point is followed by the no evidence and insufficient evidence points relative thereto.

We overrule these points.

■ The will of Mrs. Atkinson expressly recognizes the fact that all of the property owned by her and her husband was community property. Some of her bequests in this will devised only her community interest. Her bequest to Appellee devised the entire community interest. Thus at her death, D. O. Atkinson, Sr. was put to an election under Mrs. Atkinson's will. This was a question of fact to be determined by the trial court and we hold that there was sufficient evidence to sustain the judgment under the facts set out above. Lawrence v. Coffield, 468 S.W.2d 544 (Tex.Civ.App.1971, writ ref'd n. r. e.); Farmer v. Zinn et al., 276 S.W. 191 (Tex. Comm'n App.1925, opinion adopted); Cunningham v. Townsend, 291 S.W.2d 438 (Tex.Civ.App.1956, writ ref'd n. r. e.); Wurth v. Scher, 327 S.W.2d 72 (Tex.Civ. App.1959, no writ); see 60 A.L.R.2d 736.

Nor can we agree with Appellants' seventh point of error that the court erred in the judgment rendered because the oral contract alleged in Appellee's pleading was in violation of the statute of frauds and thus unenforceable.

Consequently, we overrule the point.

An oral agreement to make mutual wills is taken out of the Statute of Frauds by part performance, as by the death of one party, leaving a will in accordance with the agreement, and the acceptance of benefits, under such will, by the survivor. Kirk v. Beard, 162 Tex. 144, 345 S.W.2d 267 (1961).

To quote from *Kirk*: "Mutual wills have been executed pursuant to an oral contract plus the acceptance by the survivor of the benefits provided by the will of the deceased. The deceased party to the contract has fully and completely performed."

The judgment of the trial court is affirmed.

Affirmed.