**G. A. LAWRENCE et ux., et al., Appellants,**

v.

**H. H. COFFIELD, Appellee.**

**No. 11828.**

Court of Civil Appeals of Texas, Austin.

June 2, 1971.

Rehearing Denied June 23, 1971.

Barkley, Cutcher & Alderson, James L. Cutcher, Taylor, for appellants.

Ellett & Camp, Robert L. Ellett, Cameron, for appellee.

O'QUINN, Justice.

The principal question in this case is whether the surviving spouse of the testator was put to an election under her husband's will and elected to take under the will, so that her deed subsequent to his death conveyed only a life estate which terminated at her death.

Trial was before the court without a jury under stipulations of the facts. The trial court rendered judgment for appellee, adjudging him the owner of an undivided one-half interest in the land conveyed to him by the testator's widow. The court awarded the other one-half interest to appellants who are successors to the rights of remaindermen named in the will subject to the widow's life estate.

Fritz C. Fahrendorf executed a will in Milam County on January 12, 1956, naming his wife, Clara Fahrendorf, independent executrix, and disposing of real and personal property described in the will. The testator died on October 13, 1958, nearly three years after making his will. The will was admitted to probate, and Clara Fahrendorf qualifed as independent executrix in December 1958.

The disposition Fahrendorf made in the will of a 218-acre farm is the subject of this litigation. In paragraph V of the will, Fahrendorf provided:

"I give my 218-acre farm at Tracy in Milam County, Texas, which I bought from The First National Bank of Dallas to my wife, CLARA FAHRENDORF for and during her natural life with the right to use, occupy and enjoy the same and to receive the rents and revenues therefrom and upon her death the same shall go to G. A. LAWRENCE and wife, ANNIE LAWRENCE absolutely and in fee simple title forever."

The record shows that Fahrendorf and his wife had no children, that they had been married to each other since June 12, 1912, and that all of the property mentioned in the will, including the 218-acre farm, was community property. It is further shown that G. A. Lawrence and wife, Annie, named as remaindermen as to the 218-acre farm, were tenants on the farm and lived on the land until the death of Clara Fahrendorf on June 26, 1962. Lawrence died in January, 1969, and his widow, Annie Lawrence, and their five children are the appellants in this cause.

About two years before her death, on July 26, 1960, Clara Fahrendorf executed a deed to H. H. Coffield, the appellee, for a consideration of $4,000 in cash, describing the 218-acre farm and containing this declaration immediately following the description of the land:

"It is the intent herein to convey all of my undivided one-half interest in and to above described premises, together with the life estate in the remaining one-half interest, and plus any other interest that I may now own or hereafter acquire in said property."

Lawrence and his wife paid rents on the 218 acres to Clara Fahrendorf, after the death of the testator, until Clara Fahrendorf conveyed to Coffield. Thereafter until the death of Mrs. Fahrendorf, Lawrence and his wife paids the rents to Coffield.

The trial court ordered the 218-acre farm sold, on stipulation of the parties that the property was incapable of partition in kind, and directed that the proceeds be divided equally between Coffield, the appellee, and the Lawrences, appellants, subject to the one-sixteenth mineral interest of the First National Bank in Dallas. We reverse the judgment of the trial court and render the judgment we conclude should have been entered.

The judgment below was erroneous if the interest Clara Fahrendorf had in the farm was a life estate only and if Lawrence and his wife were owners of the fee as remaindermen under the will. To resolve the question, we must determine whether Fahrendorf's will put his wife to an election and, if it did, whether she elected to take under the will, accepting only a life estate in the tract of land.

██ The rule is established in Texas that where a testator disposes by will of property not his own, and the will also provides benefits for the real owner which the latter would not otherwise enjoy, such owner may by express or implied election to take under the will, cause his or her own property in question to be treated as if it had passed by the will. "A fundamental prerequisite for the application of this rule is that the will shall purport to dispose of the property which the testator does not own." See rule stated in Graser v. Graser, 147 Tex. 404, 408, 215 S.W.2d 867, 870, cols. 1–2 (1948).

Before the rule may be applied it is required that the language of the will conclusively evidence the intent of the testator to dispose of property he does not own. It is necessary that the language of the will be open to no other construction, for the "law presumes that no man will attempt a testamentary disposition of the property of others," and the law "deprives no man of his property merely by conjecture." Avery

v. Johnson, 108 Tex. 294, 192 S.W. 542, 544, col. 1 (1917).

Bearing these rules in mind, we now examine the will of Fritz C. Fahrendorf in all its provisions to determine whether the language is open to any construction other than that the testator purported to dispose of property he did not own.

Under paragraphs I and II the testator directed that he receive a Christian burial befitting his circumstances and that expenses of burial and of last illness, and all his just and honest debts, be paid. Under paragraph III the testator left cash bequests of $300 to each of three named persons. Under paragraph IV he made a gift of $500 to the Pythian Home at Weatherford, Texas, and directed his executrix to pay out the money as soon as practical. Paragraph IX, the final provision of the will, named the independent executrix, without bond, in the usual and accepted manner.

All other disposition of property was made by the testator in paragraphs numbered V through VIII, which are set out fully:

"V.

I give my 218-acre farm at Tracy in Milam County, Texas, which I bought from The First National Bank of Dallas to my wife, CLARA FAHRENDORF for and during her natural life with the right to use, occupy and enjoy the same and to receive the rents and revenues therefrom and upon her death the same shall go to G. A. LAWRENCE and wife, absolutely and in fee simple title forever.

VI.

My 129-acre farm and my 121-acre farm at Walkers Creek in Milam County, Texas, the 129-acre farm having been purchased by me from Cooper Grocery Company and being known as the "Paul Thompson place" and my 121-acre farm having been bought from the Trustee in bankruptcy in the John Dobbins bankruptcy, I give to my wife, CLARA FAHRENDORF for and during her natural life to be used, occupied and enjoyed by her and she to have the rents and revenues therefrom during her life, and at her death I give the same to PETE SUSIK absolutely and in fee simple title forever.

VII.

To my wife, CLARA FAHRENDORF, I give the building owned by me in Block D of the Original Town of Cameron, Texas, bought from J. K. Freeman by me which was formerly occupied by Pearson Furniture Company for and during her natural life with the right to use, occupy and enjoy the same and give to her all of the rents and revenues therefrom during her natural life and at her death the same to go absolutely and in fee simple title forever to ALL SAINTS EPISCOPAL CHURCH, of Cameron, Texas, or the BISHOP OF THE DIOCESE in which it may be located at the time of my death, as the rules of the Episcopal Church may require, said building to either be sold and put in a building fund for the purpose of building an Episcopal church in Cameron, Texas, or said church may use the rent and revenue therefrom for the purpose of building a church, the only restriction on this gift being that the said building shall ultimately be used for a building fund, and it is not meant to create a condition in this devise nor to create a limitation whereby title might revert to my estate. The said Episcopal Church shall have such building under any circumstances but they shall use the proceeds from it only for a building fund.

VIII.

All the rest and residue of my estate, whether real, personal or mixed, I leave absolutely and in fee simple title forever to my beloved wife, CLARA FAHRENDORF."

The parties have stipulated that all of the property that was the subject of Fahrendorf's will was community property. The rule applicable to this situation was stated in Avery v. Johnson, supra, (p. 544, col. 1), and was followed in Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620 (1935):

"Where a testator owns a partial interest in land and the disposal of the land is the subject of his will, it is only where the intention to treat and devise the entire land as his own is revealed by clear and unequivocal language that the will is to be construed as the disposition of more than his own interest, putting the co-owner of the land to his election whether he will take under it because of its conferring upon him, by other provisions, some benefit from the testator's own estate which, but for the will, he would not receive."

In the case before us, Fahrendorf made disposition of three farms and a piece of town property in which he had a partial interest only in language we regard as clearly showing a disposition of more than his own interest.

As to the 218-acre farm which is the subject of this lawsuit, the testator said, in paragraph V, *"I give my* 218-acre farm * * * which *I bought* from The First National Bank * * * *to my wife * * for and during her natural life * * ** and *upon her death the same shall go to* G. A. LAWRENCE and wife * * * *absolutely and in fee simple title forever."* (Emphasis added).

Similar language was employed in paragraph VI, in which the testator disposed of two other farms, leaving a life estate only to his wife, and devising the land, on his wife's death, to others in fee simple. That language is repeated in its significant phrases:

*"My* 129-acre farm and *my* 121-acre farm * * * the 129-acre farm *having been purchased by me* from Cooper Grocery Company * * * and *my* 121-acre farm having been bought from the Trustee

in bankruptcy * * * *I give to my wife * * * for and during her natural life * * * and at her death I give the same* to PETE SUSIK *absolutely and in fee simple title forever."* (Emphasis added).

In language not unlike these bequests, the testator disposed of the town property, evidently commercial, in paragraph VII, in this manner:

*"To my wife * * * I give the building owned by me in* Block D * * * Cameron, Texas, *bought from* J. K. Freeman *by me * * * for and during her natural life * * * and at her death the same to go absolutely and in fee simple title forever to* ALL SAINTS EPISCO-PAL CHURCH * * * said building to either be sold and put in a building fund * * * or said church may use the rent and revenue therefrom for the purpose of building a church * * *"* [the only restriction being that the gift be used in time for the building fund] * * * "and *it is not meant to create a condition in this devise nor to create a limitation whereby title might revert to my estate.* The *said Episcopal Church shall have such building under any circumstances* but they shall use the proceeds from it only for a building fund." (Emphasis added).

The tenor of testator's every disposition of these properties is the same. We are unable to give the testator's language any other construction than that he sought to dispose of property not entirely his own. We have searched the will in vain to find some phrase or expression by which the testator evidenced a recognition of his wife's community interest in the farms and the town property and an indication that he intended to dispose of his part only. The language throughout is consistently pointing in the direction of disposing of "my farm * * * which I bought," giving his wife only a life estate, with the right to use and occupy the land and to enjoy the rents and revenues derived from it "for and during her natural life," and directing that at her death the entire piece of property "shall go to" a remainderman

"absolutely and in fee simple forever." Nothing in this language acknowledges the right of the wife to devise her part of the community to a different devisee, or her right while living to convey her interest by deed to other than the devisee named by her husband in his will.

The testator without qualifying language purported to dispose of the entire community in devising a remainder in fee to certain named devisees, subject only to a life interest in his wife. The interests of the devisees, under the testator's language, would vest immediately on his death, subject to the wife's life estate. Walker v. Thornton, 124 S.W. 166 (Tex.Civ.App. 1910, writ ref.; Houston v. Harberger, 377 S.W.2d 673 (Tex.Civ.App. Fort Worth 1964, writ ref. n. r. e.). If the testator's wife had preceded him in death, her life interest only would have been affected, and the remainder would have been accelerated, effective upon the testator's death. Lacey v. Floyd, 99 Tex. 112, 87 S.W. 665 (1905); Goodson v. Goldsmith, 131 Tex. 418, 115 S.W.2d 1100 (1938).

Appellee relies upon two decisions of courts of civil appeals in recent years to demonstrate that the language of the testator in this case does not show an attempt by him to devise more than his undivided interest in the community property. In Buschman v. Bryant, 400 S.W.2d 950 (Tex. Civ.App. Eastland 1966, no writ), the testator in a preamble to his will expressed his desire "to make disposition of *my* property" and specified that the devised land was "to be taken *out of the property which I own* in the Wilmouth survey." (Emphasis added). There the court said that those words indicated an intention to dispose of only what the testator owned. The court also observed that "The language of the will as a whole does not show by clear and unequivocal language an intention to dispose of any part of * * * [his wife's] one-half interest in the community."

We find no such expressions by the testator in the will now under construction.

When Fahrendorf referred to a farm or the town property, he designated it as his, without any word or phrase to indicate that he recognized the property as community, or that his wife had any interest whatever in the land. The testator acknowledged no interest, expressly or impliedly, which his wife had in the land, and in each instance he made her a gift for life, with rights of occupancy and rents, and gave the remainder in fee of the entire farm or business property to a devisee he alone named who would take "absolutely and in fee simple."

The other recent decision appellee argues as applicable here is Atkinson v. Peron, 447 S.W.2d 503 (Tex.Civ.App. Corpus Christi 1969, writ ref. n. r. e.). In that case the court found that the words "all of the *personal property belonging to me*" and "all of *my real estate*", and other phrases referring to "*my* personal property" and "*my* real estate" in themselves indicated an intention to dispose only of the testator's own property. (Emphasis added). The court concluded that although the wife received some benefits under the will to which she would not have been entitled but for it, "nothing belonging to her, whether community or separate property, was taken away from her or disposed of by the will."

In connection with these cases, particularly the latter, appellee turns to the language of paragraph VIII of Fahrendorf's will, in which the testator stated, "All the rest and residue of *my estate,* whether real, personal or mixed, I leave absolutely and in fee simple forever to my beloved wife, CLARA FAHRENDORF." (Emphasis added).

We are unable to find in the language of this paragraph, and in use of the term "my estate," recognition by the testator that his wife had any interest whatever in the three farms and the town building which in the three preceding paragraphs he devised in fee to certain remaindermen, subject only to the life interest he had declared in his wife.

In both *Buschman* and *Atkinson* the testator indicated a desire to dispose of his own property only, and whatever other language he used tending to indicate a different intention did not displace the first expressions which in themselves would have prevented a conclusion that the language of the will was open to no other construction than that the testator sought to dispose of an interest he did not own. We think that a fair and reasonable reading of Fahrendorf's will, without knowledge that the fact was otherwise, would lead the reader to conclude that the testator owned as his separate property everything devised by the will, and that, out of the consideration of a devoted husband, gave to his wife a life interest in the farms and town property so that she would be cared for until her death, at which time the entire interest in such properties would go absolutely and in fee to the remaindermen the testator named in the will. The residual clause of the will, leaving "the rest and residue of my estate" to the wife, did not serve to change or reduce the extent of the estate devised to the remaindermen, absent other language in the will qualifying such gifts or in some manner indicating that the testator intended to dispose of his interest alone in such property.

Upon our holding that the will is open to no other construction except that the will disposed of property of Mrs. Fahrendorf and that she was put to an election, we come next to consider whether the benefits which the will purports to give are benefits within the doctrine of election. In making our decision, which is a question of law, we look to the rules the Supreme Court stated in Wright v. Wright, 154 Tex. 138, 274 S.W.2d 670 (1955), Dakan v. Dakan, supra, and Baldwin v. Baldwin, 134 Tex. 428, 135 S.W.2d 92 (1940), Tex.Civ. App., 137 S.W.2d 1067.

Appellee argues that Mrs. Fahrendorf, as the sole beneficiary under the residuary clause, could have repudiated the will and caused all benefits accruing to her to pass by intestate succession. "Hence, by re-

pudiating the will," appellee contends, "and electing not to take under it, she receives exactly the same benefits as by taking under it, without being subjected to its burdens." We are not unaware of the general rule appellee relies upon that where a residuary bequest or devise lapses or is void, the property falls into the residuary clause and passes to the residuary legatee, unless a different intention is expressed in the will. Kuehn v. Bremer, 132 S.W.2d 295 (Tex. Civ.App. Waco 1939, writ ref.). But we do not understand the rule to be controlling, or applicable, in ascertaining whether there are benefits within the doctrine of election.

The test is not whether the benefits to Mrs. Fahrendorf were more, or were less, under the will than they would have been if she had taken under the statutes of descent and distribution. The real question is whether the benefits under the will were or were not things she could have been deprived of legally without her consent. This test, which the Supreme Court used in deciding Wright v. Wright, supra, was under facts there essentially the same as in this case. The Supreme Court stated the rule in this language:

"The question of whether the benefits * * * are within the doctrine of election * * * does not depend upon the value of the benefit. Nor is it to be determined by comparing them with what the statutes of descent and distribution would afford the beneficiary in the absence of a will. If such were the test, the result in a case like the present, wherein there were no children of the testator, would be to regard the will as giving the respondent merely a part of what she was already entitled to, that is, the whole community estate. This is unsound, since her right to the whole is clearly subject to the testator's right to will his half to another. The proper test, therefore, is whether the alleged benefits granted her by the will are or are not something of which she could legally be deprived without her consent. If they are, there is a benefit, which she can accept only by accepting also the burdens; if they are not there is no

benefit and thus no case for election. Accordingly, a bequest to the respondent of the testator's half of all or any part of the community estate is a benefit to her although, absent a will, she would have inherited it and everything else." (274 S.W.2d 676, col. 1).

An examination of the inventory and appraisal filed in the proceedings under which Fahrendorf's will was probated shows that under paragraph VIII, the residuary clause, the testator left to his wife all his community interest in both real estate and personal property. The real estate included three houses, four town lots, and two farms, valued at more than $40,000. The personal property consisted of three bank accounts, aggregating more than $2,700, and cattle, vehicles, farm implements, and personal and household effects appraised at more than $10,000. Under provisions of the will preceding the residuary clause, as already noted, the testator left to his wife a life estate in the 218-acre farm which is the subject of this lawsuit and a life interest in two other farms, with the right to rents and returns from these lands during her life.

After the death of testator, Mrs. Fahrendorf caused the will to be probated and qualified as the independent executrix, taking charge of the assets of the estate. No account for the estate was opened by Mrs. Fahrendorf at a bank. A joint bank account, amounting to about $2,500, Mrs. Fahrendorf devoted to her personal use. She sold the cattle and placed the proceeds in the joint account. About three months after her husband's death, Mrs. Fahrendorf transferred the balance of the joint account into her personal account and used it for her needs. Mrs. Fahrendorf collected rents on a house left to her under the residuary clause and deposited the money in her personal account. As observed earlier, Mrs. Fahrendorf collected farm rents from the Lawrences, tenants on the 218-acre farm. A promissory note received by Mrs. Fahrendorf under the residuary clause was paid to her after the testator's death in the principal amount of $5,400.

Although in the deed Mrs. Fahrendorf made to Coffield she declared her "intent to convey all" of her "undivided one-half interest" in the 218-acre farm, she recognized in the same clause "the life estate in the remaining one-half interest" which she received under her husband's will. When Mrs. Fahrendorf took all the money in the bank, accepted rents from the farms, sold the cattle and used the money, collected the outstanding note and devoted it to her use, all under and by virtue of the gift to her of her husband's half under his will, she received a benefit and elected to take under the testator's will, and she and her grantee, Coffield, were thereafter estopped to question any disposition Fritz Fahrendorf made of the property in controversy. Cunningham v. Townsend, 291 S.W.2d 438 (Tex.Civ.App. Eastland 1956, writ ref. n. r. e.). As stated in that case, "The doctrine of election is that he who accepts a benefit under a will must adopt the whole contents of the will insofar as it concerns him, conforming to its provisions, and renouncing every right inconsistent with it." Citing Miller v. Miller, 149 Tex. 543, 235 S.W.2d 624 (1951).

We hold that Mrs. Fahrendorf was put to an election under her husband's will, that she accepted benefits under the will which she could have been deprived of legally without her consent, and that she could accept the benefits she did receive only by accepting also the burdens. Under this holding, Mrs. Fahrendorf could legally convey to Coffield only her life interest in the 218-acre farm, which interest upon her death terminated, as the fee simple title vested in the remaindermen, G. A. Lawrence and his wife.

We reverse the judgment of the trial court ordering that the 218-acre farm be sold and the proceeds be divided equally between appellee and appellants. We ren-

der judgment that appellee take nothing and that appellants have fee simple title to all of the 218 acres, subject only to the outstanding one-sixteenth mineral interest of the First National Bank of Dallas.

Reversed and rendered.