

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00417-CV

IN THE ESTATE OF ROBERT R.
COLE, DECEASED

----------

FROM THE PROBATE COURT OF DENTON COUNTY
TRIAL COURT NO. PR-2009-00804

----------

## MEMORANDUM OPINION[1]

----------

Appellant Judith Cole (Judith) appeals from the trial court's judgment entering a take-nothing judgment on her claims involving her deceased husband's will. We reverse and render part of the trial court's judgment and affirm the remainder of the trial court's judgment.

----

[1]*See* Tex. R. App. P. 47.4.

## I. BACKGROUND

### A. FACTS

Robert R. Cole Sr. (Robert Sr.) died on September 16, 2009, leaving a will dividing his estate between three beneficiaries: his wife Judith, his daughter Karen Cole (Karen), and his son Robert R. Cole Jr. (Robert Jr.). Robert Sr. specifically provided that it was his "intention in this Will to dispose of all my property, real, personal, and mixed, including my one-half interest in the community property of myself and my wife [Judith]." To Judith, Robert Sr. devised "all my tangible personal property located upon my homestead[2] or within my home, including all vehicles, animals and equipment, save and except the personal property given to others either during my lifetime or hereinafter in this Will." Robert Sr. left his homestead to Karen "subject to the homestead rights of [Judith]." To Robert Jr., Robert Sr. left (1) "all funds, securities, and investments remaining in the account maintained in my name only, after payment of my just debts and the expenses associated with the probate of my estate, such property being my separate property" (the investment account) and (2) "all . . . firearms and hunting equipment."

Other than these specific bequests, Robert Sr. included a residuary bequest: "I give the rest and residue of my estate to Karen and Robert [Jr.], share and share alike." Robert Sr. appointed Karen as executor and instructed

_____

[2]The 22-acre homestead was Robert Sr.'s separate property because he bought the property before he married Judith in 1996.

2

her to pay "all of my just debts, including the expenses of my last illness and funeral and expenses related to the probate of my estate" from "the separate property account [i.e., the investment account] maintained in my name only." Robert Sr. also included a forfeiture clause,[3] which provided that if the will was contested by any beneficiary "in any manner, including but not limited to the characterization of my property as my separate property," the bequest under the will to that beneficiary would be revoked. *See generally* Tex. Est. Code Ann. § 254.005 (West 2014) (recognizing forfeiture clauses).

## B. PROCEDURE

### a. Trial

After the will was admitted to probate, Judith filed an application for surviving-spouse benefits, seeking a family allowance, requesting confirmation of her homestead rights, and asking to have her exempt property set aside. *See id.* §§ 102.003, 353.051, 353.053, 353.101 (West 2014). She further alleged that the investment account bequeathed to Robert Jr. as Robert Sr.'s separate property contained community property; thus, she "claim[ed] a community property interest in such account not to exceed one-half of the total assets of such account." *See id.* § 55.001 (West 2014). Finally, Judith sought reimbursement for her portion of community funds spent on capital improvements

---

[3]These types of forfeiture clauses are also referred to as *in terrorem* clauses. *See, e.g.*, *Di Portanova v. Monroe*, 402 S.W.3d 711, 715–16 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

3

made to the homestead, which enhanced the value of the homestead.  *See* Tex. Fam. Code Ann. § 3.402(a)(8) (West Supp. 2014).

Karen filed an objection to Judith's application and a counterclaim requesting a declaratory judgment for "a determination of whether or not the Last Will and Testament of [Robert Sr.] puts [Judith] to an election."  In her counterclaim, Karen asserted that Robert Sr.'s will put Judith to an election: "(1) taking under the terms of the Will, or (2) pursuing her interest in the [investment] account, if any, under laws concerning community property."  Karen alleged that Judith had destroyed or concealed the binders that contained the financial statements regarding the investment account.  Karen further argued that by contesting Robert Sr.'s will, Judith automatically divested herself of any devise under the forfeiture clause.

In response, Judith raised the affirmative defense that "any proceeding taken was done with just cause and the action maintained in good faith"; thus, she did not forfeit her right to take under the will by virtue of the forfeiture clause. *See* Tex. Est. Code Ann. § 254.005(1)–(2).[4]  Judith additionally sought to recover

---

[4]We note that the jury was charged and the parties consistently referred to the two requirements rendering a forfeiture clause unenforceable as "*just* cause" and "good faith."  The statue in effect at the time of Robert Sr.'s death—former probate code section 64 as effective June 19, 2009—referred to these requirements as "*probable* cause" and "good faith."  The current version of this statute—section 254.005 of the estates code—uses "*just* cause" and "good faith."  Because there seems to be no substantive difference between just cause and probable cause, we will defer to the parties' nomenclature for the remainder of this opinion.  *See generally* Kara Blanco & Rebecca E. Whitacre, *The Carrot and Stick Approach:  In Terrorem Clauses in Texas Jurisprudence*, 43 Tex. Tech L.

4

damages from Karen for conversion, unjust enrichment, money had and received, and common-law debt.

On December 21, 2010, the probate court heard some of the disputed issues and determined that (1) Judith was entitled to homestead rights in Robert Sr.'s homestead and mineral-royalty income arising from the homestead; (2) Judith was entitled to repayment for funeral expenses and a portion of Robert Sr.'s debts, which Judith had paid; and (3) Judith was entitled to a $36,000 family allowance. *See* Tex. Const. art. XVI, § 52; Tex. Est. Code Ann. §§ 102.002–.003, 353.101, 355.102, 355.110, 355.112 (West 2014). The trial court severed these issues from the remainder of the suit "so that the effect of this Judgment is to be a Final Judgment for all purposes." *See* Tex. R. Civ. P. 41, 174(b); Denton Cnty. (Tex.) Probate Ct. Loc. R. 1.6. Neither Judith nor Karen appealed from this judgment.

The issues remaining after the December 21, 2010 judgment later were tried to a jury. *See* Tex. Est. Code Ann. § 55.002 (West 2014). During the trial and before testimony was concluded, the trial court determined as a matter of law that the will put Judith to an election but that whether Judith made such an election was a fact question for the jury. Judith objected to the trial court's determination that the will put Judith to an election.

---

Rev. 1127, 1147–48 (2011) (discussing prior common law in Texas regarding probable cause, good faith, and forfeiture clauses and explaining section 64 of probate code was enacted to clarify and not change that law).

After a seven-day trial, the jury made several findings adverse to Judith:

- Judith knowingly elected to take under the will.

- Judith's expenditures on the homestead were not capital improvements, negating her right to a reimbursement.[5]

- Judith did not bring or maintain her suit seeking a community-property interest in the investment account in good faith or for just cause.

- Several of the securities included in the investment account were Robert Sr.'s separate property.

Judith filed a motion to set aside the jury's verdict and a motion for mistrial, both seeking that the jury's answers be set aside and a new trial ordered. *See* Tex. R. Civ. P. 301, 320. The trial court entered final judgment on August 30, 2013, including its prior legal conclusion that the will put Judith to an election. The trial court then stated that whether Judith had made such an election was a question of fact, subject to the jury's finding that she elected to take under the will. The trial court essentially entered a take-nothing judgment on Judith's claims based on the jury's findings[6] and awarded Karen attorney's fees. The trial court further stated that "[a]ll relief not expressly granted herein is denied." Judith's post-verdict, prejudgment motions were overruled by operation of law. *See* Tex. R. Civ. P. 329b(c).

---

[5]*See* Tex. Fam. Code Ann. § 3.402(a)(8).

[6]The trial court, based on the parties' pre-verdict stipulation, disregarded the jury's answer regarding the character of several of Robert Sr.'s guns and "accept[ed]" the parties' stipulation.

## b. Appeal

Judith appeals and argues that the trial court erred by concluding that the will contained an election and that the jury's finding that Judith made an election was supported by legally insufficient evidence and should not have been submitted to the jury. She also argues that the evidence was insufficient to support the jury's finding that there were no capital improvements to the homestead. She further contends that the jury charge erroneously defined good faith and just cause. Finally, Judith argues that the jury's finding that she did not act in good faith or with just cause in bringing and maintaining her suit seeking an interest in the investment account conflicted with its finding that not all the securities in the investment account were Robert Sr.'s separate property. Judith argues a remand of all issues is the appropriate disposition of this appeal.

In bringing her appeal, Judith requested and designated a partial reporter's record; thus, we have been provided only with the testimonies of Judith, a realtor who valued the homestead, and a real-estate appraiser who also valued the homestead. *See* Tex. R. App. P. 34.6(b)(1), (c). In making her request for a partial record, Judith specified the issues she would be raising on appeal, which included the issues actually raised. *See* Tex. R. App. P. 34.6(c)(1). After Judith perfected her appeal, Karen died and Robert Jr. succeeded her as the executor of Robert Sr.'s estate. Neither Karen nor Robert Jr. designated additional portions of testimony to be included in the reporter's record. *See* Tex. R. App. P. 34.6(c)(2).

7

## II.  ELECTION

In her first two issues, Judith asserts that Robert Sr.'s will did not "put her to an election as a matter of law"; thus, the election question should not have been submitted to the jury and the jury's finding that Judith knowingly elected to take under the will was supported by legally insufficient evidence.

### A.  EXISTENCE OF ELECTION IS QUESTION OF LAW

Judith seems to argue that the trial court incorrectly concluded that the presence of an election in the will was a question of law for the trial court.  With an election, a testator may force his surviving spouse to elect either to assert her one-half interest in the community estate and forfeit any gifts that may be made to her under the will or to give up her one-half interest in the community estate and instead receive the gifts under the will.  *See* 1 Ronald R. Cresswell et al., *Texas Practice Guide:  Wills, Trusts & Estate Planning* § 4:351 (2014).  Whether such an election is present in a will is a question of law.  *Wright v. Wright*, 274 S.W.2d 670, 674 (Tex. 1955), *overruled in part on other grounds by Tobin v. Garcia*, 316 S.W.2d 396, 400 (Tex. 1958); *see also In re Estate of Slaughter*, 305 S.W.3d 804, 808 (Tex. App.—Texarkana 2010, no pet.) ("If the court can give a certain or definite legal meaning or interpretation to the words used, the will is unambiguous, and the court should construe it as a matter of law."); *cf. Farmer v. Zinn*, 276 S.W. 191, 192 (Tex. 1925) (recognizing whether election was made by beneficiary is a question of fact); *Wurth v. Scher*, 327 S.W.2d 72, 75 (Tex. Civ. App.—Fort Worth 1959, no writ) (same).  *See generally* Tex. Est. Code Ann.

§ 254.005 (holding forfeiture clause enforceable as a matter of law unless affirmative defense of just cause and good faith proven by preponderance of the evidence). Thus, the trial court correctly concluded that whether Robert Sr.'s will put Judith to an election was a question of law.

## B. WILL DID NOT CLEARLY AND UNEQUIVOCALLY PUT JUDITH TO AN ELECTION

Judith asserts that because Robert Sr. provided that he intended to dispose only of "all my property, real, personal, and mixed, including my one-half interest in the community property of myself and [Judith]," she was not put to an election of either taking under the will or asserting her community-property interest in the investment account. Judith contends that Robert Sr.'s devise of the investment account could only have referred to the funds in the account that were either his separate property or his one-half of the community property contained in the community account. *See Baldwin v. Baldwin*, 134 S.W.2d 92, 95 (Tex. 1940) (holding election present only if "the testator unequivocally attempted to dispose of [the testator's spouse's] community interest in the estate; the presumption being that he did not attempt to do so"). Thus, we must determine whether the trial court correctly concluded that the will put Judith to an election.

We review the trial court's legal determination that such an election was present in Robert Sr.'s will de novo. *Steger v. Muenster Drilling Co.*, 134 S.W.3d 359, 373 (Tex. App.—Fort Worth 2003, pet. denied); *cf. Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009) (holding

9

question of whether contract is ambiguous is one of law for trial court to determine, which is reviewed do novo). Finally, we are to give terms their plain, ordinary, and generally accepted meanings unless the will itself shows a different meaning was intended. *Steger*, 134 S.W.3d at 372.

"The doctrine of election is based on the principle that a person may not take benefits under a will and, at the same time, set up a right or claim of his own, even if well founded, which would defeat or in any way prevent the full effect and operation of every part of the will." *Smith v. Smith*, 657 S.W.2d 457, 459 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.). An election exists if the "benefits given the wife in the will are inconsistent with her rights allowed by law." *Dakan v. Dakan*, 83 S.W.2d 620, 625 (Tex. 1935). To determine if an election is present in a will, we must focus on the testator's intent, which is divined by looking at all parts of the will as a whole. *Perfect Union Lodge No. 10 v. InterFirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex. 1988); *Smith*, 657 S.W.2d at 459; *Wurth*, 327 S.W.2d at 74. An election is present if the testator clearly and unequivocally stated in the will that his intent was to dispose of the beneficiary's property such that the will's only possible construction is that the testator intended that the bequests and devises must be accepted in lieu of the homestead and exempt personal property rights. *See Miller v. Miller*, 235 S.W.2d 624, 627 (Tex. 1951); *In re Estate of McFatter*, 94 S.W.3d 729, 734 (Tex. App.—San Antonio 2002, no pet.); *Wurth*, 327 S.W.2d at 75; *Leach v. Leach*, 208 S.W.2d 618, 620 (Tex. Civ. App.—Galveston 1948, writ ref'd n.r.e.). We

presume that the testator intended to dispose only of his own property. *McFatter*, 94 S.W.3d at 734 (quoting *Smith*, 657 S.W.2d at 459); *Lewis v. Campbell*, 520 S.W.2d 472, 473 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.).

For an election to exist, the testator must dispose of property not his own and the will must also provide benefits for the owner of the mischaracterized property that the owner "would not otherwise enjoy." *Lawrence v. Coffield*, 468 S.W.2d 544, 546 (Tex. Civ. App.—Austin 1971, writ ref'd n.r.e.); *see also Dakan*, 83 S.W.2d at 625 (finding election existed in will where husband bequeathed wife monthly payment inconsistent with her inheritance rights allowed by law as compensation for devise of entire community property asset). An example of such an election is if a husband's will provides for two trusts, with the first trust receiving the wife's half of the community estate plus part of the husband's separate property and the second trust containing the husband's half of the community estate together with the remainder of his separate property. "To compensate the wife for allowing her half of the community property to pass into [the first trust] under the husband's will, various benefits are usually provided her from both [trusts]." Arnold D. Kahn & Jon J. Gallo, *The Widow's Election: A Return to Fundamentals*, 24 Stan. L. Rev. 531, 532–33 (1972). Therefore, the trust scenario would confer benefits on the wife that she would not otherwise be entitled to absent the husband's will, thereby putting the wife to an election. In sum,

11

> [i]f the will does not dispose of property of the beneficiary, the [beneficiary] is not put to an election, but may simply take what the will gives and also take his or her own community half interest. On the other hand, if the will disposes of property of the beneficiary and at the same time gives the [beneficiary] some 'benefit', however small, the beneficiary cannot take the benefit under the will without also the disposition it makes of his or her property. In the latter case, where a community interest is involved, the beneficiary must accordingly elect between taking under the will, with consequent loss as well as benefit, and, on the other hand, repudiating the will and taking only his or her community half independently of the will.

*Wurth*, 327 S.W.2d at 75.

In general, a testator's statement that he disposed of "my property," "my estate," or similar language, standing alone, indicates that the testator intended to dispose only of property owned by the testator and does not support the existence of an election. *See Davis v. E. Tex. Sav. & Loan Ass'n*, 354 S.W.2d 926, 932 (Tex. 1962); *Lewis*, 520 S.W.2d at 473; *Atkinson v. Peron*, 447 S.W.2d 503, 507 (Tex. Civ. App.—Corpus Christi 1969, writ ref'd n.r.e.). Therefore, where there is such language, courts generally reject arguments that a testator has disposed of the entire community interest of himself and his spouse in certain property, so as to require an election by the spouse, and rely on the presumption that bequests should be construed as disposing only of the testator's own partial interest in the property. *See, e.g., Miller*, 235 S.W.2d at 627; *Schelb v. Sparenberg*, 124 S.W.2d 322, 325–26 (Tex. 1939); *Haley v. Gatewood*, 12 S.W. 25, 26 (Tex. 1889); *Lewis*, 520 S.W.2d at 474; *Logan v. Logan*, 112 S.W.2d 515, 520 (Tex. Civ. App.—Amarillo 1937, writ dism'd); *Waller v. Dickson*, 229 S.W. 893, 895 (Tex. Civ. App.—Texarkana 1921, no writ).

12

The language in Robert Sr.'s will is similar in that he specified in the first sentence under the provision entitled "Bequests and Devises" that he intended to dispose only of "my property, real, personal, and mixed, including my one-half interest in the community property of myself and my wife." Thus, the general rule as recited above dictates that this language, standing alone, does not support the existence of an election. The will was clear to that point. However, Robert Sr. also provided that "all funds, securities, and investments" in the investment account, which was "maintained in my name only," was "my separate property." This language, although clearly indicating that he was characterizing the investment account as his separate property and disposing of its entirety as such, does not mitigate his prior clear and specific language that he intended only to dispose of his separate property and his one-half of the community property. Instead, Robert Sr. created an ambiguity or uncertainty that dictates as a matter of law that no election is required. *See Wright*, 274 S.W.2d at 674; *see also Ferguson v. Ferguson*, 111 S.W.3d 589, 595 (Tex. App.—Fort Worth 2003, pet. denied) ("In interpreting a contract, we must consider all of the provisions with reference to the entire contract; no single provision will be controlling.").

In other words, Robert Sr.'s characterization and disposition of the investment account did not clearly and unequivocally indicate that Judith was put to an election such that no other interpretation of the will is possible based on Robert Sr.'s prefatory language that he intended only to dispose of the property that was his. *See Davis*, 354 S.W.2d at 368–69; *Schelb*, 124 S.W.2d at 325–26;

13

*Avery v. Johnson*, 192 S.W. 542, 544 (Tex. 1917); *Lewis*, 520 S.W.2d at 474; *Peron*, 447 S.W.2d at 507; *cf. Atkinson v. Schmidt*, 482 S.W.2d 687, 691 (Tex. Civ. App.—Austin 1972, no writ) (because all property owned by testator was community property and will specifically devised "entire community interest," surviving spouse was put to an election). Accordingly, because it is neither clear nor unequivocal that Robert Sr. intended to dispose of Judith's community-property interest in the investment account given that he characterized it as separate property but intended only to bequeath property that was his, we must presume that Robert Sr. intended to dispose only of his own property. *See Schelb*, 124 S.W.2d at 326; *Avery*, 192 S.W. at 544; *Buschman v. Bryant*, 400 S.W.2d 950, 952–53 (Tex. Civ. App.—Eastland 1966, no writ). Additionally, Judith received no benefits under the will that she "would not otherwise enjoy." *Lawrence*, 468 S.W.2d at 546; *see Wurth*, 327 S.W.2d at 75. The benefits Judith received—life estate in the homestead, reimbursement for funeral expenses, several guns, a family allowance, survivorship bank accounts—were conferred on Judith by law or the parties' stipulation. Robert Jr. does not specifically assert that Judith received any bequest under the will that she would not have received but for the will.

Therefore, the will did not clearly and unequivocally put Judith to an election, and the trial court erred to conclude otherwise. We sustain issue one. We need not address issue two—Judith's contention that the evidence was legally insufficient to support the jury's finding that she knowingly elected to take

14

under the will—because the will did not contain an election as a matter of law; thus, whether Judith made an election should not have been submitted to the jury. *See* Tex. R. App. P. 47.1.

### III. CAPITAL IMPROVEMENTS

In her third issue, Judith asserts that legally insufficient evidence supported the jury's findings that none of the community estate's expenditures on the separate-property homestead were capital improvements.[7] The jury charge defined capital improvements as "expenditures that by their nature and character are long lasting or permanent and not merely repairs, which were made after the date of marriage." Judith did not object at trial and does not argue on appeal that this definition was incorrect. *See Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005) (holding absent objection to the charge, the sufficiency of the evidence is reviewed in light of the charge submitted). If a party is attacking the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, and there is no evidence to support the finding, we

---

[7]Judith states that the jury's findings on this issue were "against the great weight and preponderance of the evidence" and recites the standard of review governing a factual-sufficiency challenge. However, the gravamen of her complaint is that the testimony by her two valuation experts and her own testimony were "conclusive" and proved that the repairs and expenditures were capital improvements subject to reimbursement "as a matter of law." Further, Judith clearly attacked only the legal sufficiency of the evidence to support these findings in her motion to set aside the jury's verdict. Based on the content of Judith's arguments in the trial court and this court, we construe this point to attack only the legal sufficiency of the evidence to support the jury's findings that none of the repairs and expenditures were capital improvements to the homestead.

review all the evidence to determine whether the contrary proposition is established as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *see Vallone v. Vallone*, 644 S.W.2d 455, 458–59 (Tex. 1982) (holding party claiming right of reimbursement for community funds spent to improve a spouse's separate property bears the burden of proof on the amount of the reimbursement); *see also* Tex. Fam. Code Ann. § 3.402(e) (providing party seeking offset to reimbursement claim has the burden of proof).

The jury found that none of the following expenditures were capital improvements to the 22-acre homestead subject to reimbursement:  fencing, clearing, horse barn, roads, pole barn, water well, pump, roofing, windows, paving, foundation, and garage door openers.  At trial, Judith testified to the repairs and expenditures to the homestead before and after her marriage to Robert Sr.  Judith recounted that Robert Sr. did most of the clearing work and built the fence.  Further, a pond on the homestead was dug before her marriage to Robert Sr.  The repairs to the roof were paid for through insurance funds, which were remitted solely to Robert Sr.  She recognized that she had received a benefit from the expenditures while living in the home both before and after Robert Sr.'s death.  Indeed, without some of the expenditures, the home would have been uninhabitable.

Realtor Miogene Alexander testified that based on her assumption that the homestead was valued at $1,380,000, the capital improvements Judith was seeking reimbursement for enhanced the value of the homestead by "[a]t least

16

[$]335,000." Alexander testified that she had no independent knowledge of what improvements were made during the marriage or what funds were used. Indeed, a real-estate appraiser and broker, Chip Sargent, testified that Alexander used the actual cost of each improvement in calculating the property's enhanced value, which was improper because "cost is not necessarily value." For example, Sargent stated that the added fencing, new windows, paving, repaired foundation, roof, and garage-door openers did not enhance the ultimate value of Robert Sr.'s property. Sargent explained why the actual cost of an improvement was an improper measure of enhanced value:

> Well, [Alexander] used the cost of the window as its contribution to value, and I'm saying all these things that have been [done] to the property, . . . they're benefits to the property. There's no doubt. They have reduced the effective age of the property, but you have to consider them in their total.
>
> Like I said [before], to take one specific item out and say that this one item is the difference between two equal properties - - let's say the garage door opener. . . . Let's say it costs $600 to put in a garage door opener. Are we saying that 22 acres with a 3,000-square-foot house that was built in '96 is going to sell for exactly $600 less if it doesn't have a garage door opener, compared to the 22 acres next door with a 3,000-square-foot house built in '96? I don't think the market is that precise.

Sargent stated, however, that the totality of the improvements enhanced the value of the homestead by $64,000.[8] Sargent believed the house and the improvements to the property "underutilized" the possible value of the property

---

[8]Sargent stated that the value of the homestead was $1,310,000, and not the $1,380,000 Alexander assumed based on a third-party valuation.

17

because the house was not what a buyer spending over $1,000,000 would expect for that amount.

We conclude that under the charge as given to the jury, Judith did not prove as a matter of law that each of the repairs or expenditures were capital improvements that enhanced the value of the homestead; thus, the evidence was legally sufficient to support the jury's findings that none of the listed expenditures and repairs were subject to reimbursement. Reimbursement is an equitable right that "arises when the funds or assets of one estate are used to benefit and enhance another estate *without itself receiving some benefit.*" *Vallone*, 644 S.W.2d at 459 (emphasis added); *see also* Tex. Fam. Code Ann. § 3.402(b); *Barras v. Barras*, 396 S.W.3d 154, 173 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Judith testified that she received benefits from the community's expenditure of funds to repair or improve the separate-property homestead. The jury had legally sufficient evidence that the community estate was not entitled to a reimbursement based on Sargent's testimony regarding the proportionately minimal enhancement in value to the homestead and based on Judith's testimony that she received benefits from the improvements. *See Sargeant v. Sargeant*, 15 S.W.2d 589, 594 (Tex. 1929) (holding the surviving spouse, as life tenant of homestead and "enjoying the fruits, rents, and revenues thereof, cannot charge the reversioner with the cost of repairs."). We overrule issue three. We need not address issue four because it is predicated on a favorable finding on issue three. *See* Tex. R. App. P. 47.1.

## IV. FORFEITURE CLAUSE

Judith asserts in her fifth issue that the trial court improperly instructed the jury regarding her affirmative defense to the application of the forfeiture clause, resulting in harmful error. In her sixth issue, she argues that the jury's findings that there was no good faith or just cause was against the great weight and preponderance of the evidence.

As we explained before, the will included a forfeiture clause entitled "This Will is not to be Contested":

> Should any person named in this Will contest it in any manner, including but not limited to the characterization of my property as my separate property, I revoke any gift to him or her, and direct that his or her share of any gift be disposed of as if he or she had predeceased me leaving no lawful descendants.

Under the law in effect at the time of Robert Sr.'s death, a forfeiture clause is unenforceable if "probable cause exists for bringing the action and . . . the action was brought and maintained in good faith." Act of May 25, 2009, 81st Leg., R.S., ch. 414, § 1, 2009 Tex. Gen. Laws 995, 995 (amended 2011 & 2013) (current version at Tex. Est. Code Ann. § 254.005); *see In re Estate of Gibbons*, No. 14-13-000780-CV, 2014 WL 5591141, at *5 (Tex. App.—Houston [14th Dist.] Nov. 4, 2014, no pet. h.) (discussing enforceability of forfeiture clause under former section 64 of probate code); Gerry W. Beyer, *Will Contests–Prediction and Prevention*, 4 Est. Plan. & Community Prop. L.J. 1, 8 (2011) (same); *cf.* Tex. Prop. Code Ann. § 112.038 (West 2014) (providing forfeiture clause in trust

enforceable unless just cause and good faith by person acting contrary to clause found by preponderance).

"However, for good faith and [just] cause to be an issue, there must necessarily have been a contest contrary to the provision of the [forfeiture] clause." *In re Estate of Newbill*, 781 S.W.2d 727, 730 (Tex. App.—Amarillo 1989, no writ). We must first determine if the forfeiture clause was triggered and if so, we then determine whether the triggering event was brought with just cause and maintained in good faith. *In re Estate of McKissick*, No. 13-02-022-CV, 2003 WL 1847072, at *4 (Tex. App.—Corpus Christi Apr. 10, 2003, no pet.) (mem. op.); *see also Di Portanova*, 402 S.W.3d at 716 ("The first issue this Court must decide is whether this suit . . . thwarts the testator's intent, thus triggering a forfeiture."). The determination of whether a forfeiture clause is triggered— whether the contesting party's actions fall within the terms of the forfeiture clause—is a question of law. *See Ferguson*, 111 S.W.3d at 598–99. A breach of a forfeiture clause will be found "only where the acts of a beneficiary or devisee clearly fall within the express terms." *Id.* at 599.

Here, the trial court conflated the question of whether the will put Judith to an election and whether the forfeiture clause was triggered by Judith's community-property claim on the investment account. In short, the trial court seemed to assume that the forfeiture clause was triggered by the presence of an election in the will. Therefore, the trial court submitted Judith's affirmative defense to the application of the forfeiture clause as if it applied to the presence

of an election. This was incorrect. Judith's affirmative defense applied to the enforcement of the forfeiture clause, not to the presence of an election in the will. *Cf.* Jo Ann Engelhardt, *In Terrorem Inter Vivos: Terra Incognita* 26 Real Prop. Prob. & Tr. J. 535, 566 (1991) ("[C]ase law exists which holds that an in terrorem clause cannot deprive a spouse of her statutory rights because she is taking against the provisions of the will, not under it.") Although the trial court recognized that Karen pleaded for a declaratory judgment "seeking a determination of whether or not [Judith] has contested the Last Will," the trial court never made such a declaration and, in fact, specifically stated that "[a]ll relief not expressly granted herein is denied." Thus, Karen's request for a declaration that Judith, by raising a community-property claim on the investment account, contested the will such that the forfeiture clause was triggered was expressly denied by the trial court. Judith's affirmative defense should not have been submitted to the jury because there was no predicate conclusion that Judith's community-property claim on the investment account was a contest as defined in the forfeiture clause such that Judith's affirmative defense of good faith and just cause was implicated. *Cf. In re Tourneau's Estate*, 156 N.Y.S.2d 793, 796–97 (Sur. Ct., New York Cnty. 1956) (holding proceeding to enforce widow's right to elect to take against will or to request construction of will may not be used to invoke forfeiture clause contained in will).

Here, Judith asserted that the terms of Robert Sr.'s will bequeathed only his separate property portion and his one-half of the community estate's portion

21

of the investment account. Therefore, she was not contesting the will or attempting to "destroy it." *Calvery v. Calvery*, 55 S.W.2d 527, 530 (Tex. 1932). "She merely asserted a right which she contends is vested in her by the terms of the will." *Id.* As did the trial court, we conclude that Judith was not contesting the will such that the forfeiture clause was triggered. *See Ferguson*, 111 S.W.3d at 599; Joyce Moore, *Will Contests: From Start to Finish*, 44 St. Mary's L.J. 97, 120–21 (2012). Accordingly, the trial court correctly denied Karen's declaratory-judgment request but erred to submit Judith's affirmative defense to the jury in the absence of a predicate finding that the forfeiture clause was triggered by Judith's actions. Because the trial court denied Karen's request for a declaration that Judith contested the will and triggered the forfeiture clause, Judith's affirmative defense was irrelevant. Indeed, the trial court did not require Judith to forfeit any gifts or bequests under the will even though the jury found no good faith or just cause. Therefore, any error in submitting Judith's affirmative defense did not affect the ultimate judgment and was harmless. *Cf. Thota v. Young*, 366 S.W.3d 678, 693–94 (Tex. 2012) (holding harm not presumed with improper submission of defensive theory and stating erroneous question immaterial if answer cannot alter the effect of the verdict); *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010) (holding erroneous submission of question of law in jury charge harmless if answer may be deemed immaterial and could have been disregarded by the trial court); *see also* Tex. R. App. P. 44.1(a). We sustain in part issue five to the extent Judith argues the good-faith and just-cause issues

22

were improperly submitted to the jury, overrule the remainder of issue five, and overrule issue six.

## V.  DISPOSITION

In her seventh issue, Judith contends that if we conclude she was not put to an election under the will, "the obvious ruling is a general remand since that ruling permeates throughout the entire judgment."  Robert Jr. counters, also without any citation to authority, that such a remand would be inappropriate under the facts of this case:

> Judith wants another trial . . . .  A five-year fight over two dog trailers and $20,000 has already resulted in the exhaustion of two-thirds of the funds that [Robert Sr.] intended to leave to his son Robert [Jr.].  Robert [Jr.] thinks that is enough, and respectfully prays that this Court write the final chapter of this case, and conclude that chapter with the words "The End."

During oral argument, counsel for neither party was able to articulate what issues were case dispositive or the effect of our conclusions on the trial court's judgment.

In general, we must "render the judgment that the trial court should have rendered" unless further proceedings are "necessary" or "the interests of justice" require a remand.  Tex. R. App. P. 43.3.  We have concluded that the will did not put Judith to an election and that she was not contesting the will such that the forfeiture clause was triggered.  We have also concluded that although the trial court erred to submit Judith's affirmative defense to the jury, such error did not harm Judith because the affirmative defense was irrelevant based on the trial

23

court's conclusion that Judith did not contest the will. The remaining portions of the jury's verdict decided (1) that there were no capital improvements to the homestead subject to reimbursement (which we have concluded was supported by sufficient evidence), (2) the portion of the investment account that was Robert Sr.'s separate property (which Judith does not challenge), and (3) that the dog trailers were "hunting equipment" such that they passed to Robert Jr. under the will (which Judith does not challenge).[9] Based on the correct findings and conclusions, the unchallenged findings and conclusions, and our ability to determine the judgment that the trial court should have rendered, we conclude a general remand on all issues is not appropriate.

But Judith also contends that a remand is necessary regarding attorney's fees. The parties agreed to submit the attorney-fees issue to the trial court, and the trial court awarded Karen attorney's fees based on her declaratory-judgment action, finding that the award was "reasonable and necessary" and the amount was "equitable and just." See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). The trial court denied all other attorney-fees requests, including Judith's request for attorney's fees under "debt and Declaratory Judgment." To obtain an award of attorney's fees, a party generally must prevail on a cause of action for which such fees are recoverable and must recover damages on that cause of

---

[9]The jury also determined that several guns and a truck were not Judith's separate property. Based on the parties' stipulation regarding these items, the trial court disregarded these findings. Judith does not challenge these findings or the stipulation.

24

action.  *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995).  However, in a declaratory-judgment action, a party need not prevail on its claim in order to be entitled to an award of attorney's fees.  *See City of Temple v. Taylor*, 268 S.W.3d 852, 858 (Tex. App.—Austin 2008, pet. denied) (op. on reh'g).  Such an award in a declaratory-judgment action is left to the sound discretion of the trial court, is not dependent on whether a party prevailed, and will not be second-guessed absent a clear showing that the trial court abused its discretion.  *See Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996); *NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 466 (Tex. App.—Fort Worth 2007, no pet.).  Although Judith argues that a "general remand of the attorney's fees is required" if any portion of the judgment is reversed, she does not point to any specific error in the award of attorney's fees or otherwise argue with particularity how the trial court clearly abused its discretion in making the award.  Indeed, Judith points to no portion of the record clearly showing that the trial court's award of attorney's fees was an abuse of discretion.  We need not remand on a portion of the judgment that was not specifically challenged as an abuse of discretion.  We overrule issue seven.

## VI. CONCLUSION

The trial court correctly determined that whether the will put Judith to an election was a question of law for the court to determine; however, the trial court erred by concluding as a matter of law that Robert Sr.'s will put Judith to such an election.  Judith did not contest the will such that the forfeiture clause was

25

triggered; thus, the jury should not have been instructed on Judith's affirmative defense. However, because Judith did not contest the will under the forfeiture clause, the submission of the affirmative defense was harmless. The evidence sufficiently supported the jury's finding that the repairs and improvements to the homestead were not capital improvements subject to reimbursement. These holdings, taken as a whole, result in our conclusion that the trial court's judgment must be reversed in part, and we render a judgment for Judith awarding her one-half of the shares in the investment account that were not determined to be Robert Sr.'s separate property.[10] We affirm the remainder of the trial court's judgment. *See* Tex. R. App. P. 43.2(a), (c).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

DELIVERED: January 29, 2015

---

[10]The jury found that 143,938 of the shares in the investment account were Robert Sr.'s separate property. It appears there were 211,376 shares in the investment account on the date of Robert Sr.'s death. If that number is correct, Judith would be entitled to half of the remaining 67,438 shares in the investment account—33,719 shares. In any event, Judith should be awarded one-half of the shares remaining in the investment account after the 143,938 of Robert Sr.'s separate-property shares are subtracted out.